**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Gary C. STARNES, Defendant–Appellant.**

No. 93–1124.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 14, 1993.

Decided Jan. 24, 1994.

Joseph R. Wall, Asst. U.S. Atty. (argued), Rodney Cubbie, Milwaukee, WI, for plaintiff-appellee.

James W. Reilley, Dianne Ruthman, Eric J. Bell (argued), Reilley & Associates, Des Plaines, IL, for defendant-appellant.

Before CUMMINGS and COFFEY, Circuit Judges, and ZAGEL, District Judge.[*]

COFFEY, Circuit Judge.

Gary Starnes was charged with two counts of possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and one count of conspiring to possess with intent to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 846, and convicted before a jury. Starnes was sentenced to eight years of incarceration for the conspiracy conviction, and to twenty years of imprisonment for each possession conviction. Each of the prison terms was ordered to be served concurrent and concurrent with each other. The district court also ordered that each term of imprisonment be followed by five year terms of supervised release, concurrent and concurrent with each other, and a $50 special assessment on each conviction. On appeal, the defendant contends that his trial counsel rendered ineffective assistance and that the trial judge improperly instructed the jury. We affirm.

## BACKGROUND

The cocaine conspiracy charged in the indictment ran from 1978 through 1988. In July 1978, Starnes and his partner Jeff Trager were arrested in Fort Lauderdale, Florida and charged with cocaine trafficking. At the time of their arrest in 1978, they were in possession of drug paraphernalia and over a quarter million dollars in cash.[1] The conspiracy terminated in November 1988 when one of their major coke suppliers, George Jenich, was arrested in an FBI sting operation.

At Starnes's trial, Jenich, Charles Froschauer, and John Browning testified about their many cocaine transactions with Starnes and Trager. Trager operated in Florida and procured multi-kilogram quantities of coke

---

[*] The Honorable James B. Zagel, District Judge for the Northern District of Illinois, is sitting by designation.

1. The paraphernalia consisted of clear plastic ziplock baggies, a triple beam scale, a cutting agent, and strainers used for mixing the cocaine and the cutting agent. All of this drug paraphernalia except the cutting agent tested positive for the presence of cocaine.

from Colombians and other suppliers. After receiving the cocaine, Trager used "runners" to transport the drug to Starnes in northern Illinois. Starnes would then sell the cocaine and forward the proceeds to Trager.

Starnes and Trager lived life in the fast lane off their cocaine proceeds, travelling to Egypt, Fiji, Australia, and New Zealand, attending the 1984 and 1986 superbowls, and hiring private jets to take them and others to major boxing matches in Atlantic City and Montreal. They bought a car wash in Florida as well as some real estate where they physically buried some of their partnership profits. When one of their suppliers, Charles Froschauer, was arrested on cocaine charges in 1979, Starnes and Trager selected an attorney for Froschauer and paid his attorney's fees. Froschauer testified, Starnes and Trager were "together all the time," were "like one," and continued to distribute cocaine as a team until at least 1987.

In the spring of 1987, Trager's Colombian connection "fronted" Trager with eleven kilograms of poor quality coke (it smelled like oil). Trager in turn shipped it to Starnes in Illinois. Starnes and Jenich sold the poor quality cocaine and kept the money received from the sales for themselves. Starnes concocted a story that the police had seized the shipment. In support of his fabrication, he mailed newspaper clippings of a recent seizure to Trager claiming that the cocaine described in the article was the cocaine Trager had sent him. Trager was left in a bind with his Colombian source, for Trager had not as yet reimbursed them for the eleven kilograms.

Starnes's actions with respect to the eleven kilogram shipment caused a rift with Trager and the partnership waned. As Trager subsided from the picture, Starnes no longer had a steady, reliable source of cocaine forcing him to cut back his dealing. In need of a new supplier, he turned to Jenich. Unknown to Starnes, Jenich had become an informant for the FBI as the result of an arrest on cocaine-related charges and had been asked by the FBI to assist them in determining whether Starnes was still involved in the cocaine business. A subsequent telephone call and meeting between Starnes and Jenich

were recorded on audio tapes by the FBI. The audio tapes recorded Starnes reminiscing about his past drug dealing exploits and also fantasizing about drug transactions he hoped to conduct in the future. At the conclusion of the meeting, Starnes arranged to purchase coke from Jenich. Under FBI supervision, Jenich met with Starnes in the Embassy Suites hotel in Brookfield, Wisconsin on February 15, 1991. Starnes was videotaped purchasing three kilograms of cocaine from Jenich and was arrested by FBI agents. Starnes was indicted three months later on May 21, 1991.

Count one of the indictment alleged that Starnes conspired with Trager and others to possess with intent to distribute in excess of five kilograms of cocaine between July 1978 and November 15, 1988. Count two, related to the shipment of "bad" cocaine and charged that on or about March 1, 1987, and April 1, 1987, Starnes possessed with intent to distribute eleven kilograms of cocaine. Count three of the indictment alleged that Starnes possessed with intent to distribute three kilograms of cocaine on February 15, 1991. Starnes went to trial on April 7, 1992, and was found guilty on all three counts on April 15, 1992. Starnes raised a number of post-trial motions which the trial court denied.

On appeal Starnes raises two issues: (1) that he was denied effective assistance of counsel at trial and (2) that the trial court erroneously instructed the jury on the defense of entrapment.

## I.

As to Starnes's ineffective assistance of counsel allegations, "[w]e have previously noted the heavy burden a defendant bears in establishing an ineffective assistance of counsel claim:

> To prevail on his claim of ineffective assistance of counsel, [the defendant] must show that his trial counsel's performance fell below an objective standard of reasonableness, and that counsel's deficiencies prejudiced his defense. *Strickland v. Washington*, 466 U.S. 668, 688–92, 104 S.Ct. 2052, 2064–67, 80 L.Ed.2d 674 (1984). We begin with a strong presumption that

counsel rendered reasonably effective assistance, and consider counsel's effectiveness under the totality of the circumstances. *United States v. Zylstra,* 713 F.2d 1332, 1338 (7th Cir.), *cert. denied,* 464 U.S. 965, 104 S.Ct. 403, 78 L.Ed.2d 344 (1983). To overcome that presumption, [the defendant] must identify 'acts or omissions [of counsel which] were outside the range of professionally competent assistance.' *Strickland,* 466 U.S. at 690, 104 S.Ct. at 2066. To satisfy the prejudice component of *Strickland,* [the defendant] 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.' *Id.* at 695, 104 S.Ct. at 2068–69."

*United States v. Moralez,* 964 F.2d 677, 683 (7th Cir.) (quoting *United States v. Snyder,* 872 F.2d 1351, 1358 (7th Cir.1989)), *cert. denied,* —— U.S. ——, 113 S.Ct. 293, 121 L.Ed.2d 217 (1992).

### A.

Faced with overwhelming evidence of Starnes's involvement with cocaine over the years, Starnes's attorney conceded to the jury during opening argument that "there was no doubt that Mr. Starnes [participated in cocaine transactions] in the late '70's and the early '80's with Mr. Trager[,]" but argued that nevertheless Starnes had defenses to the charges against him. Starnes's counsel argued that the evidence would show the existence of multiple conspiracies, rather than a single conspiracy. Counsel then argued that the applicable statute of limitations gave the government five years to bring a conspiracy charge, and that because Starnes was indicted on May 21, 1991, if Starnes withdrew from the charged conspiracy before May 21, 1986, then the jury would be required to acquit Starnes of the conspiracy charge. On appeal, Starnes contends that under *United States v. Schweihs,* 971 F.2d 1302 (7th Cir. 1992), once he met his burden of presenting evidence that he withdrew, he was entitled to an instruction that the government bore the burden of disproving beyond a reasonable doubt that he withdrew by May 21, 1986, the applicable statute of limitations date, and

that his attorney was ineffective for failing to tender such an instruction to the court.

"Unless a defendant withdraws from a conspiracy, he is still liable for the acts of his co-conspirators." *United States v. Price,* 988 F.2d 712, 723 (7th Cir.1993) (citing *United States v. Bafia,* 949 F.2d 1465, 1477 (7th Cir.1991), *cert. denied sub nom. Kerridan v. United States,* —— U.S. ——, 112 S.Ct. 1989, 118 L.Ed.2d 586 (1992)). "[O]ne who seeks to withdraw from a conspiracy must take affirmative action ·to do so by going to the authorities and/or inform his co-conspirators that he is withdrawing and is no longer involved." *United States v. Pitz,* 2 F.3d 723, 729 (1993) (citing *United States v. Patel,* 879 F.2d 292, 294 (7th Cir.1989), *cert. denied,* 494 U.S. 1016, 110 S.Ct. 1318, 108 L.Ed.2d 494 (1990)). Seventh Circuit case law is clear that, "[m]ere cessation of activity is insufficient to constitute withdrawal." *Pitz,* 2 F.3d at 729 (citing *Patel,* 879 F.2d at 294)). The Seventh Circuit's Jury Instruction on withdrawal from a conspiracy (No. 5.13), patterned after our case law, reads in part:

"In order to withdraw, [the conspirator] must have taken some affirmative act to terminate his effort to promote or facilitate the conspiracy· by [wholly depriving his prior efforts of effectiveness in the commission of the crime, giving timely warning to the proper law enforcement authorities, doing an affirmative act inconsistent with the object of the conspiracy where the act is communicated in a manner reasonably calculated to reach co-conspirators, making proper effort to prevent the commission of the crime]."

██ "Generally, a defendant is entitled to an instruction on any defense recognized in the law and supported by sufficient evidence to allow a reasonable jury to find in the defendant's favor." *Schweihs,* 971 F.2d at 1322 (citing *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 886, 99 L.Ed.2d 54 (1988)). Although the defendant bears the burden of coming forward with evidence of withdrawal, once the defendant advances sufficient evidence of "some act to disavow or defeat the purpose" of the conspiracy, the prosecution must disprove the defense of withdrawal beyond a reasonable doubt.

*United States v. Read,* 658 F.2d 1225, 1236 (7th Cir.1981) (quoting *Hyde v. United States,* 225 U.S. 347, 369, 32 S.Ct. 793, 803, 56 L.Ed. 1114 (1912)).

■ In this case Starnes was not entitled to an instruction that it was the government's burden to prove beyond a reasonable doubt that Starnes did not withdraw, as Starnes failed to present sufficient evidence that by May 21, 1986, he had taken the affirmative act of withdrawing. For instance, there is no testimony that Starnes informed any of the other conspirators that he would no longer participate in the cocaine distribution ring or that he advised the authorities that he was withdrawing. We are not persuaded that the testimony of Starnes's former wife was sufficient to merit an instruction since she never testified that Starnes informed anyone that he was withdrawing from the conspiracy. *See infra.* To the contrary, the evidence was overwhelming that Starnes did not withdraw from the conspiracy with Trager by May 21, 1986 for Trager shipped and Starnes accepted eleven kilograms of coke in the spring of 1987. Since withdrawal requires proof of an affirmative action on the part of the defendant, and because there was no evidence the defendant affirmatively acted to withdraw from the conspiracy on or before May 21, 1986, Starnes was not entitled to a jury instruction reciting that the government had the burden of establishing beyond a reasonable doubt that Starnes did not withdraw. We conclude that defense counsel's representation of Starnes was not ineffective for failing to request such an instruction.

**B.**

■ Starnes next contends that in spite of his attorney telling the jury he would prove Starnes withdrew from the conspiracy before May 21, 1986, his counsel failed to present evidence of withdrawal. Starnes argues his counsel was ineffective because he failed to live up to the representation.

Contrary to Starnes's contention, the record reveals that Starnes's attorney, based upon the facts available to him, made an attempt—albeit an unsuccessful one—to establish that Starnes's withdrew from the conspiracy before May 21, 1986. Starnes' counsel called Starnes' ex-wife,[2] Melanie, who testified that he had attempted to disassociate himself from Trager by the time she and Starnes were married in 1985. Melanie related that she was a member of the Mormon church, which "encourages people to abstain from things [like cocaine] that hurt, harm their body," and that Starnes was baptized into the church in 1984, before they were married. She testified that her husband's friends had ostracized him for marrying her, and that they referred to him as "preacher man" due to his becoming active in the church. (Melanie testified that Starnes "hardly ever" missed Sunday services, that he went through twenty-two discussions about the tenets of the religion, that he directed the athletic program for young men, and that he was active in the church until 1988.) Melanie also stated that at the time of their 1985 marriage, in her opinion Starnes was undergoing "a transition period where he [Starnes] was in the process of changing his lifestyle." By presenting evidence of Starnes's involvement with the Mormon faith, which frowned upon the use of any drugs or alcohol, and the subsequent ridicule he received for having participated in the church, counsel for Starnes obviously was attempting to persuade the jury that Starnes must have withdrawn from his previous agreement to distribute cocaine before May 21, 1986.

Starnes' ex-wife then testified that in late July or early August of 1986 she accompanied Starnes to Florida to sell the car wash that Trager and Starnes owned jointly. Melanie stated, Starnes "wanted [the car wash] sold because he wanted to sever that tie with [Trager]." Melanie recalled that:

2. Gary and Melanie were married in August 1985 in Zion National Park, Utah; George Jenich, Jeff Trager, John Browing, and other co-conspirators participated in and/or attended the wedding. Gary and Melanie were divorced in August of 1989. Melanie denied that the divorce

was arranged in order to protect assets in the event Starnes was arrested on drug charges. In contrast are the audio tapes which record Starnes declaring that the divorce was to protect assets in the event of his arrest.

We intended to stay at Mr. Trager's house for about two or three nights but the very first evening Gary went into the other room and was drinking with Jeff Trager. [Starnes] fell asleep on the couch and meanwhile Jeff went around the outside of the house, outside the room where I was staying, there were open windows, and [Trager] was very, he was crying, he was yelling, he was, he went on and on about how I had ruined their friendship, that Gary wouldn't see him any more, he wouldn't do anything with him, he wouldn't do any deals with him. He had refused to let Jeff come up and see him and he just was continually like this on and off. He would grow more belligerent and angry with me ... outside the window going on and on about how I had ruined this perfect friendship and that Gary didn't want to see him any more.

Thus, the record fails to support Starnes's theory on appeal that his trial counsel failed to present evidence that Starnes withdrew from the conspiracy prior to the key statute of limitations date, May 21, 1986.

Melanie Starnes never testified that Starnes told Trager directly that he was withdrawing from the cocaine conspiracy nor did she testify that Starnes ever took the affirmative step of reporting the cocaine conspiracy to the authorities. Defense counsel can only present the credible evidence available to him; he cannot manufacture evidence of withdrawal and cannot present facts he knows are not true. That the jury did not believe that Starnes had withdrawn from the conspiracy by May 21, 1986, speaks to the overwhelming evidence presented by the government, not to the ineffectiveness of Starnes's attorney. The trial court characterized Starnes's ineffective assistance of counsel claim as "nonsense" finding that

The record clearly demonstrates in this case that [Starnes's attorney] did a thoroughly competent and professional job of representing Mr. Starnes. The fact of the matter here was that Mr. Starnes really had no defense to these claims. The evidence against him was staggering. Given the mass of evidence against him, this case could have been tried to a hundred differ-

ent juries with a hundred different defense lawyers representing Starnes, and the result in each case would have been the same; Mr. Starnes would have been convicted on all counts.

Likewise, we are convinced that the record demonstrates that Starnes's counsel made a clear, though unsuccessful, attempt to present evidence of Starnes's alleged withdrawal from the conspiracy. Therefore, we reject each of Starnes's ineffective assistance of counsel allegations.

## II.

Starnes's attorney argued to the jury that Starnes had been entrapped into buying the three kilograms of cocaine purchased from Jenich at the Brookfield, Wisconsin Embassy Suites hotel on February 15, 1991. Citing *Jacobson v. United States,* —— U.S. ——, 112 S.Ct. 1535, 118 L.Ed.2d 174 (1992), Starnes argues that the trial court erred by failing to instruct the jury that the government was required to prove beyond a reasonable doubt that he was not entrapped. Starnes's allegation lacks merit for two reasons: (1) Starnes failed to raise the argument at trial that he now advances (i.e., that the jury should have been instructed that the government had the burden of disproving entrapment), and (2) Starnes was not entitled to such an instruction because he failed to present substantial evidence that he was entrapped.

■ "In order to establish entrapment at trial, the defendant must bring forward evidence both that he was induced by the government to commit the crime and that he was not predisposed to engage in the criminal conduct." *United States v. Sanders,* 962 F.2d 660, 679 (7th Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 262, 121 L.Ed.2d 192 (1992). It is only when the defendant has established both inducement and lack of predisposition that the burden shifts to the government to disprove entrapment. *United States v. Cervante,* 958 F.2d 175, 178 (7th Cir.1992). "The entrapment analysis ends without inquiry into inducement if the defendant was predisposed to commit the charged conduct. A predisposed individual is one

who is prepared and eager for the opportunity to commit a crime." *Id.*

 Under Federal Rule of Criminal Procedure 30, a party may not raise an error or omission in a jury instruction unless the party timely objected and "stat[ed] distinctly the matter to which that party objects and the grounds of the objection." In this case, rather than objecting to the trial court's instructions, Starnes's counsel stated that he had "[n]o objections to the instructions as they will be given." By failing to raise any objection to the trial court's instructions until now on appeal, Starnes forfeited the right to claim that the trial court erroneously instructed the jury regarding the government's burden of proof on entrapment. We will therefore review his allegation under the plain error standard. *See United States v. Sherwood,* 770 F.2d 650, 652–53 (7th Cir. 1985). A plain error is an error "so egregious that it resulted in 'an actual miscarriage of justice, which implies the conviction of one who but for the error probably would have been acquitted'." *Id.* at 653 (citing *United States v. Siverstein,* 732 F.2d 1338, 1349 (7th Cir.1984), *cert. denied,* 469 U.S. 1111, 105 S.Ct. 792, 83 L.Ed.2d 785 (1985)).

Upon review of the record, we fail to observe the alleged plain error. Contrary to Starnes's claim that he was entrapped into buying the three kilograms of cocaine, the evidence clearly demonstrates that he was predisposed to commit the criminal act of buying (possessing) cocaine from Jenich with intent to distribute it. The FBI's videotape captured Starnes accepting possession of the three kilograms of coke (and even recorded him asking for a fourth kilogram). The audio tapes made shortly before the February 15th drug transaction with Jenich recorded Starnes reminiscing about past drug dealing exploits and fantasizing about future coke transactions he hoped to conduct. Together, the video and audio tapes demonstrated that Starnes was prepared and eager to buy (possess) the three kilograms of cocaine. He had been buying, selling, and using the drug for more than a decade, and was caught red-handed buying three kilograms of the drug. In light of the overwhelming and uncontradicted evidence that Starnes was predisposed to purchase the coke from Jenich, we hold Starnes's conviction for possession of cocaine with intent to distribute did not result in a miscarriage of justice. We agree with the trial court's statement that "the evidence is about as weak as it can be on entrapment here." Accordingly, we affirm Starnes's conviction for possession with intent to distribute three kilograms of cocaine.

For the foregoing reasons, Starnes's conviction for conspiring to possess with intent to distribute cocaine as well as his two convictions for possessing with intent to distribute cocaine are

AFFIRMED.