In the
United States Court of Appeals
For the Seventh Circuit

No. 97-3124

SCOTT A. FOUNTAIN,

Petitioner-Appellant,

v.

UNITED STATES OF AMERICA,

Respondent-Appellee.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 97 C 218--John C. Shabaz, Chief Judge.

Argued October 27, 1999--Decided May 1, 2000

Before BAUER, COFFEY and EASTERBROOK, Circuit Judges.

COFFEY, Circuit Judge. Nine years after his direct appeals to this Court, on April 1, 1997, Petitioner Scott A. Fountain ("Fountain") moved to vacate his sentence under 28 U.S.C. sec. 2255. After the district court denied his sec. 2255 motion on June 2, 1997, Fountain moved to alter or amend the judgment, which the district court also denied. On August 7, 1997, Fountain appealed the court's June 2, 1997 decision and subsequently filed a request for a certificate of appealability with the court. Although the trial judge denied Fountain's request, we granted the petitioner a certificate of appealability limited to the question of whether he was denied the effective assistance of counsel when his trial counsel failed to object at trial and failed to raise on direct appeal the issue of whether he was denied a fair trial when he was allegedly required to wear leg shackles in the presence of the jury. We AFFIRM.

I. BACKGROUND

On August 14, 1986, a jury found Fountain guilty of murdering a federal correctional officer and conspiring to commit that murder. He was sentenced to life imprisonment plus 150 years on September 19, 1986./1 We affirmed his murder conviction on February 22, 1988, while modifying

his sentence on the conspiracy conviction./2

Nine years later, on April 1, 1997, Petitioner moved to vacate his sentence under 28 U.S.C. sec. 2255, listing fourteen grounds, not including sub-parts, in support of his motion. Although the district court denied his sec. 2255 motion on June 2, 1997, Fountain remained undeterred and moved to alter or amend the district court's judgment on June 12, 1997, which was also denied 5 days later.

Seeking appellate review, Petitioner filed a notice of appeal and, as required under 28 U.S.C. sec. 2253, requested a certificate of appealability from the district court. Although the district judge denied his request, on September 28, 1998, this Court granted a certificate only as to one issue:

IT IS FURTHER ORDERED that a certificate of appealability is GRANTED only as to the following issue:

whether petitioner was denied the effective assistance of counsel when his attorney failed to make appropriate objections or motions during trial, and failed to raise on direct appeal, the issue of whether petitioner was denied a fair trial because he was required to wear leg shackles, which the jury was able to see.

II.  ISSUE

Our review on appeal is limited to whether petitioner was denied the effective assistance of counsel when his attorney failed to make appropriate objections or motions during trial or raise on direct appeal the issue of whether Fountain was denied a fair trial because he was allegedly required to wear leg shackles in the presence of the jury. This issue, however, begs a number of more preliminary questions: Did Fountain in fact wear shackles during trial; and if true, were they visible to the jury (i.e., were they covered or hidden from the view of the jury)?

III.  DISCUSSION

At the outset, Petitioner attempts to raise additional issues, extraneous to the above certified question, including that: the district court lacked subject matter jurisdiction because the locus of where the crime occurred was not within the "territorial jurisdiction" of the federal government; and his counsel's failure to object to the trial judge's reading of his 1984 presentence report and the prejudicial and irrelevant questioning of his inmate witnesses

and the government's closing arguments, fell below an objective standard of reasonableness.

These issues, however, have not been properly presented to us for review. An appeal under sec. 2255 is permissible only if a certificate of appealability is issued. See 28 U.S.C. sec. 2253(c)(1)(B). "The certificate is a screening device, helping to conserve judicial (and prosecutorial) resources. The obligation to identify a specific issue concentrates the parties' attention (and screens out weak issues); the limitation to constitutional claims also reduces the number of appeals while simultaneously removing a category of claim that . . . has poor prospects." Young v. United States, 124 F.3d 794, 799 (7th Cir. 1997). Indeed, unless the parties "confine [their] attention to the questions in the certificate of appealability, specification serves no function." Sylvester v. Hanks, 140 F.3d 713, 715 (7th Cir. 1998). Here, Petitioner raises numerous arguments that do not speak directly, or even tangentially, to the question certified and without an expansion of the certificate by this Court, we are not required to and will not address them, regardless of their merits.

Fountain contends that these additional arguments are consistent with our order accompanying our granting of the certificate of appealability. That order, however, clearly stated that we were appointing counsel for the petitioner and set forth the briefing schedule "[p]ursuant to this court's order of September 28, 1998" granting the certificate. The order also reiterated the sole certified question:

Counsel shall address the following issue, as well as any other issues he deems appropriate:

Whether petitioner was denied the effective assistance of counsel when his attorney failed to make appropriate objections or motions during trial, and failed to raise on direct appeal, the issue of whether petitioner was denied a fair trial because he was required to wear leg shackles, which the jury was able to see.

Despite the petitioner's contention and his counsel's woeful attempts to strain this Court's language,/3 it is obvious that only arguments that directly address the specific ineffective assistance of counsel claim identified in the certificate of appealability would be "appropriate," and accordingly, we see no need to discuss any others. We proceed on the sole issue identified in the certificate.

We review a district court's denial of a sec.

2255 motion to vacate the sentence de novo on questions of law and for clear error on factual issues. See Wilson v. United States, 125 F.3d 1087, 1090 (7th Cir. 1997); Stoia v. United States, 109 F.3d 392, 395 (7th Cir. 1997). An ineffective assistance of counsel claim that constitutes the basis of a sec. 2255 motion is reviewed de novo. See id.

A sec. 2255 motion must be granted when a defendant's "sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. sec. 2255. It is well-established, however, that a sec. 2255 motion is not a substitute for direct appeal. See Barnickel v. United States, 113 F.3d 704, 706 (7th Cir. 1997). Claims not raised on direct appeal are barred from collateral review unless upon review, we have been convinced that a failure to consider the issue would amount to a fundamental miscarriage of justice. See Prewitt v. United States, 83 F.3d 812, 816 (7th Cir. 1996). Ineffective assistance of counsel claims will generally fit into this mold; they generally are not appropriate for review on direct appeal as they often attempt to rely on evidence outside the record. See United States v. D'Iguillont, 979 F.2d 612, 614 (7th Cir. 1992). Nonetheless, "[r]egardless of when it is made, because counsel is presumed effective, a party bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." United States v. Trevino, 60 F.3d 333, 338 (7th Cir. 1995).

To make out a successful ineffective assistance of counsel claim, the petitioner must demonstrate that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced his defense that it deprived him of a fair trial. See Strickland v. Washington, 466 U.S. 668, 688-94 (1984).

With regard to the performance prong, [the] defendant must direct us to the specific acts or omissions which form the basis of his claim. The court must then determine whether, in light of all the circumstances, the alleged acts or omissions were outside the wide range of professionally competent assistance.

Trevino, 60 F.3d at 338. Moreover, claims that an attorney was ineffective necessarily involve inquiries into an attorney's trial strategies, which in turn requires facts which usually are not contained in the trial record. As such, many trial determinations, like so many "other decisions that an attorney must make in the course of representation[, are] a matter of professional judgment." United States v.

Berkowitz, 927 F.2d 1376, 1382 (7th Cir. 1991). Thus, we must resist a natural temptation to become a "Monday morning quarterback." Harris v. Reed, 894 F.2d 871, 877 (7th Cir. 1990).

It is not our task to call the plays as we think they should have been called. On the contrary, we must seek to evaluate the conduct from counsel's perspective at the time, and must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.

United States v. Ashimi, 932 F.2d 643, 648 (7th Cir. 1991) (citations and quotations omitted).

Should the petitioner satisfy the performance prong, he must then fulfill the prejudice prong by demonstrating "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." United States v. Starnes, 14 F.3d 1207, 1209-10 (7th Cir. 1994). "In making the determination whether the specified errors resulted in the required prejudice, a court should presume . . . that the judge or jury acted according to law." Strickland, 466 U.S. at 694. Further,

[A] court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Some of the factual findings will have been unaffected by the errors, and factual findings that were affected will have been affected in different ways. Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support. Taking the unaffected findings as a given, and taking due account of the effect of the errors on the remaining findings, a court making the prejudice inquiry must ask if the defendant has met the burden of showing that the decision reached would reasonably likely have been different absent the errors.

Id. at 695-96.

Initially, we must resolve whether Fountain has directed this Court's attention to facts that will serve to establish that he in fact did wear shackles in the presence of the jury./4 The petitioner's briefs submitted to this Court fails to identify any evidence of his shackles, or for that matter, that the jury was able to see them if they were looking, and our review of the

record fails to reveal the same. But it is interesting to note that Fountain asserts that witnesses at trial made in-court identifications of him by describing the shoes and pants he was wearing in court,/5 thus indicating, he suggests, that his entire body, including his shackles, were in plain view of the jury. Our review of this bald assertion, however, reveals no evidence or suggestion that he wore shackles which were seen by the jury or that any witness made any reference to, described or mentioned the petitioner as wearing shackles. Fountain also directs our attention to just prior to the beginning of jury deliberations when he and his counsel were asked to approach the judge for a brief bench conference, which he claims, also exposed his shackles to the jury. Here again, Fountain's argument constitutes nothing but a bald and unsupported assertion of a fact not set forth in the record./6 Indeed, the absence of any direct or indirect evidence of the petitioner's shackles in the trial transcripts, as well as the raising of this issue nine years after his direct appeal, strongly suggests the absence of his shackling./7 But even if we were to assume that the petitioner was shackled, he has also failed to present any evidence that the jury was aware of them or that they were readily visible./8

Accordingly, we conclude that with nothing more than Fountain's own unsupported assertions of his shackling that the jury was able to see, and a record devoid of any reference to such, he has failed to sufficiently "direct us to the specific acts or omissions which form the basis of his [ineffective assistance of counsel] claim." See Trevino, 60 F.3d at 338. Thus, we also conclude that the petitioner has failed to overcome the heavy burden and presumption that his counsel was constitutionally effective. See id.

But even if we were to assume that the petitioner was shackled during trial and the jury could and did observe his shackles, such a viewing by the jury would not have caused any prejudice because it would have revealed facts that the jury in all probability ascertained from the trial: the trial testimony reflected that Fountain was incarcerated in a maximum security prison when the murder of the correctional officer took place. Moreover, we cannot say with any certainty that "but for" his counsel's failure to object to or appeal the jury's observation of his shackles, the outcome of the trial would have been different, see Starnes, 14 F.3d at 1209-10, in light of the substantial evidence of his guilt posited at trial./9 All of the events leading up to Fountain's involvement in the murder of the correctional officer, from

the pre-murder planning, to the murder itself and the post-murder admissions, were established and corroborated by witness testimony and physical evidence./10 Thus, had the petitioner even detailed specific facts of his shackling to our satisfaction, his claim would still fall short because he has failed to establish that he was prejudiced by the allegedly defective assistance of counsel.

Moreover, although there exists case law that has held that the shackling of a defendant in front of a jury can have a prejudicial impact upon the rights of a defendant, see Illinois v. Allen, 397 U.S. 337, 344 (1970); Harrell v. Israel, 672 F.2d 632, 635 (7th Cir. 1982), it is well established that a defendant may be shackled in the presence of a jury upon a showing of "extreme need," which has been defined as "necessary to maintain the security of the courtroom." Lemons v. Skidmore, 985 F.2d 354, 358 (7th Cir. 1993). After holding a hearing to determine a restraining scheme that would balance the court's safety concerns against the potential prejudice to a defendant, a trial court has wide discretion in determining whether there is an "extreme need" for the restraining of a defendant. See id. Thus, assuming Fountain wore shackles at trial and the jury was able to see them, the trial judge was not required to sustain an objection in light of the court's strong interest in maintaining courtroom security and its wide discretion in determining when and what restraints are required. See id. Similarly, in Woods v. Thieret, 5 F.3d 244, 248-49 (7th Cir. 1993), we considered the criminal histories of the defendants and the physical layout of the courtroom when we upheld a trial judge's use of restraints for inmates with violent criminal histories and serving long sentences, as necessary to maintain the security concerns of the court as well as the U.S. Marshals. Likewise here, the trial judge could very well have required Fountain to wear shackles at trial because at the time, he was incarcerated "in administrative segregation at the level 6, maximum security prison at Marion, Illinois," had a criminal history of various military offenses, including assault with a dangerous weapon and destroying government property, and "experienced a poor adjustment throughout his incarceration . . . [with] numerous disciplinary actions which are related to his impulsive and quick temper." Again, we are of the opinion that even if Fountain was shackled in the presence of the jury and established that his counsel's assistance was defective, he has failed to demonstrate prejudice because effective counsel likely would not have altered the results of the proceedings. See Starnes, 14 F.3d at 1209-10.

We deny the petitioner's sec. 2255 motion to vacate his sentence.

IV. CONCLUSION

We conclude that the petitioner has failed to sufficiently detail the specific facts and circumstances of his shackling at trial and failed to demonstrate sufficient prejudice caused by the alleged ineffective assistance of counsel. We AFFIRM.

/1 This Court vacated Fountain's original conviction due to the district court's failure to comply with Federal Rule of Criminal Procedure 11(f) and remanded the case for re-pleading. See United States v. Fountain, 777 F.2d 351, 357-59 (7th Cir. 1985). Although not at issue in this appeal, for a full procedural history and background of Fountain's offenses and conviction, see United States v. Fountain, 777 F.2d 351 (7th Cir. 1985), and United States v. Fountain, 840 F.2d 509 (7th Cir. 1988).

/2 For reasons explained in our previous opinion, we deleted the sentencing judge's 50-year postponement of Fountain's parole eligibility. See Fountain, 840 F.2d at 523.

/3 In his reply brief, counsel for the petitioner-appellant also suggests that the certificate of appealability actually certified two broad issues: (1) "whether Fountain's counsel failed to make appropriate objections or motions during trial"; and (2) "whether Fountain's counsel failed to raise on direct appeal the issue of whether he was denied a fair trial because he was required to wear leg shackles which the jury was able to see." Although we understand Counsel's zealous desire to advocate all possible arguments on behalf of his client, his strained reading of the certificate of appealability is unusual.

/4 The trial judge did not discuss whether the petitioner was in fact shackled at trial, possibly because he saw no need to in light of his finding that "[t]he record indicates that counsel's decisions [not to object to his client's shackling] did not fall below an objective standard of reasonableness. Furthermore, Petitioner has not demonstrated that the outcome of the trial would have been different absent these decisions."

/5 When asked at trial if he saw Fountain in the courtroom today and if he could describe where he was sitting and what he was wearing, Richard Sealey responded, "Well, he is sitting on my

left, which is next to you and got a brown tie on, brown Hush Puppies--well, cream Hush Puppies, brown pants, and like a looks like a white shirt to me."

/6 At oral argument, counsel for the government on appeal and at trial, Assistant United States Attorney John Vaudreuil, stated that although Fountain was shackled when he was transported to and from the courthouse, as we would expect and as that is the usual practice and procedure when federal prisoners are in transit, he was never shackled in court in front of the jury. In fact, Mr. Vaudreuil stated that in his 20 year career as an Assistant U.S. Attorney, he is aware of only one case where a defendant was forced to wear shackles at trial, and this case is not the one.

/7 As such, a quite plausible reason why his counsel never objected to his shackling is that the petitioner was never shackled in the courtroom in the presence of the jury.

/8 In fact, despite the petitioner's suggestions that his shackles were visible to the jury and witnesses during trial, witness Larry Vaughn initially mis-identified one of Fountain's attorneys as the defendant. Further, Fountain did not take the stand in his own defense. But even if Fountain was required to wear shackles while seated at the defense table, the government contends that due to the arrangement of the tables, counsel, individuals at the tables, as well as the raised position of the witness chair in front of the jury box, it was unlikely that the jury even saw Fountain's legs during trial.

/9 Indeed, the government asserts that if there was a "shackle sighting" during the brief bench conference at the conclusion of trial, it would be insufficient to satisfy the prejudice prong of the test.

/10 Fountain did not challenge his conviction on direct appeal based on the sufficiency of the evidence.