## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jun 15 2018, 10:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Stephen T. Owens
Public Defender of Indiana

John A. Pinnow
Deputy Public Defender
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

J.T. Whitehead
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Wilbert T. Sturgis,

*Appellant-Petitioner,*

v.

State of Indiana,

*Appellee-Respondent.*

June 15, 2018

Court of Appeals Case No.
46A03-1711-PC-2652

Appeal from the LaPorte Circuit Court

The Honorable Thomas J. Alevizos, Judge

Trial Court Cause No.
46C01-1304-PC-6

**Mathias, Judge.**

[1]     Wilbert Sturgis ("Sturgis") appeals the LaPorte Circuit Court's denial of his petition for post-conviction relief. Sturgis argues his trial counsel was ineffective

because he was shackled during his jury trial and his trial counsel failed to object.

[2]     We affirm.

## Facts and Procedural History

[3]     The following facts and procedural history of Sturgis's case are taken from the unpublished memorandum decision of his direct appeal:

> On the morning of September 20, 2004, teenager Barbara Day was dismissed early from Michigan City High School because of an earlier altercation she had with another teenager known only by his nickname, "Spider." Tr. p. 324. Day went to her home in Michigan City and was joined there by at least eight other individuals, including twenty-six-year-old Sturgis. Day came up with a plan, to which everyone agreed, to go to the westside of Michigan City to look for Spider and to fight him.
>
> The group at Day's house agreed to go to a school bus stop near 9th and Willard in Michigan City at about the time the bus was scheduled to drop off students. The group drove there in two cars, with Sturgis riding in a car driven by Natasha Harris. After arriving at the intersection, the group parked and got out of the cars. Day believed she saw Spider's cousin in a group of boys that included fifteen-year-old Blake Kelly walking along the sidewalk.
>
> Day approached the group of boys and began asking Spider's supposed cousin where he was. This boy denied knowing where Spider was. Kelly then told Day and her friends that they were not going to "jump him," and Day told him to be quiet because he had nothing to do with it. *Id.* at 330. One of Day's cousins,

Willie Martin, began threatening to fight Kelly but Day told him to leave Kelly alone.

While Day and her group were arguing with Kelly and his group, Sturgis walked up to Kelly and shot him in the jaw with a handgun. Kelly was unarmed, as was everyone else in the two groups besides Sturgis. This initial shot did not kill Kelly. Sturgis then put the handgun up against the side of Kelly's head and shot him again, this time killing him. Police soon obtained several statements identifying Sturgis as Kelly's killer, and they obtained a warrant for Sturgis's arrest.

On September 21, 2004, Sturgis turned himself into the Gary Police Department. He was housed in the [L]ake County Jail before being transported to the Michigan City Police Department for an interview on September 22, 2004. During the drive from the jail, officers did not engage in any conversation with Sturgis regarding the case. After arriving at the police station, Sturgis signed a waiver of rights form and submitted to an unrecorded interview. On the written waiver of rights form, next to the question "Has any force, threats or promises of any kind or nature been used by anyone to influence you to waive these rights," Sturgis originally wrote "yes" but crossed it out and wrote "no" along with his initials. Ex. 1. Initially during the unrecorded interview, Sturgis said he had been out of town when Kelly was shot so he could not have done it. He later retracted that statement, however, and admitted to what had happened.

Police then began an audiotaped interview of Sturgis, approximately one-and-a-half hours after he had arrived at the police station. At the outset of the recording, Sturgis was asked if any force, threats, or promises had been made to secure his statement, and Sturgis responded "No." Ex. 2, p. 6. Sturgis then proceeded to describe, in cogent detail, the events leading up to and including his shooting and killing of Kelly. Toward the end of the interview, Sturgis was asked if there was anything he

wanted to add to his statement, and he replied, "I think I need some psychiatric help I really do." *Id.* at p. 35.

The State charged Sturgis with murder and Class A felony kidnapping. Sturgis never filed any motions related to his competency or any alleged mental illness. However, he did file a motion to suppress his statement to police on the basis that it was allegedly involuntary. After conducting a hearing, the trial court denied this motion.

Sturgis's jury trial was held on April 11–14, 2005. During voir dire, the prosecutor read the charging information to the prospective jurors. The prosecutor also stated that the case involved "Mr. Blake Kelly, who was 15 years old at the time, [who] was shot shortly after leaving the school bus . . . ." Voir Dire Tr. p. 7. The prosecutor also noted that there had been "a lot of news media reports about that incident" and questioned prospective jurors whether they recalled reading or hearing any of that coverage. *Id.* The prosecutor also referred to Kelly's killing as a "terrible tragedy." *Id.* at 11. He also asked prospective jurors whether they knew Kelly, and one person responded that he did and that Kelly "seemed to be a good person." *Id.* at 12. Defense counsel made no objections during voir dire.

The jury found Sturgis guilty of murder but not guilty of kidnapping. Additionally, the jury entered a finding for sentencing purposes that Sturgis had a history of criminal or delinquent activity. On May 12, 2005, the trial court sentenced Sturgis to a term of sixty-five years after finding no mitigating circumstances and that his criminal history was aggravating. Although a notice of appeal was timely filed on June 9, 2005, there have been various delays in bringing this appeal to fruition. It is now finally fully-briefed and ready to be decided.

*Sturgis v. State*, 46A03-0506-CR-00304, WL 5749798, Slip op. at *1-2 (Ind. Ct. App. Sept. 30, 2015).

[4]     On April 12, 2013, Sturgis filed a petition for post-conviction relief *pro se*. Appellant's App. p. 3. Two months later, Sturgis requested a public defender. *Id*. On July 2, 2013, the State Public Defender entered an appearance.[1] *Id*. Sturgis's counsel filed an amendment to petition for post-conviction relief on December 5, 2016. *Id.* at 4. And a second amended petition was filed in April 2017. *Id.* at 61. In his petition, Sturgis argued that he was denied effective assistance of counsel when his trial counsel failed to object to Sturgis standing trial in shackles.

[5]     At the post-conviction hearing held on November 2, 2017, the former prosecuting attorney and Sturgis's trial counsel testified concerning their recollection of the use of shackles at trial. Prior to Sturgis's jury trial, the State requested Sturgis to be placed in shackles due to recent news articles from other states discussing courtroom violence, and because Sturgis's case had received public attention. His trial counsel testified that he twice objected to the use of shackles at trial. Sturgis's counsel objected to the State's request at a status hearing held on March 24, 2005. Trial counsel also recalled making a second objection during a pre-trial conference held in chambers, but there was no

---

[1] Sturgis also filed a belated direct appeal, and it was reinstated on January 20, 2015. His post-conviction relief hearing was held in abeyance until his direct appeal had been completed and Sturgis notified the court that he was ready to proceed with his petition for post-conviction relief. Appellant's App. p. 4.

record made of that objection. Both pre-trial objections were overruled. Sturgis's trial counsel did not object during trial.

[6] During the post-conviction hearing, the court agreed that Sturgis should not have been shackled during his jury trial. The post-conviction court also noted that the trial court did not provide a specific reason for requiring Sturgis to be shackled during his trial. However, the court also found:

> 8. Petitioner's shackles were not visible due to paneling surrounding the defense table in the trial courtroom.

> 9. Because no forms of restraint were readily visible to the jury from the table, none of the federal or state constitutional violations alleged by Petitioner are triggered

Appellant's App. p. 121. (internal quotations omitted). Therefore, the post-conviction court concluded that Sturgis had not established that he was prejudiced by trial counsel's failure to object to the use of shackles at trial, and it denied his petition. Sturgis now appeals.

## Discussion and Decision

[7] The post-conviction petitioner bears the burden of establishing grounds for relief by a preponderance of the evidence. *Willoughby v. State*, 792 N.E.2d 560, 562 (Ind. Ct. App. 2003), *trans. denied*. When a petitioner appeals the denial of a petition for post-conviction relief, the petitioner stands in the position of one appealing from a negative judgment. *Id.* On appeal, we do not reweigh evidence nor judge the credibility of a witness; therefore, to prevail, Sturgis must show

that the evidence as a whole leads unerringly and unmistakably to a conclusion opposite that reached by the post-conviction court. *Id.*

[8] Where, as here, the post-conviction court made specific findings of fact and conclusions of law in accordance with Indiana Post-Conviction Rule 1(6), we must determine if the court's findings are sufficient to support its judgment. *Graham v. State*, 941 N.E.2d 1091, 1096 (Ind. Ct. App. 2011), *aff'd on reh'g*, 947 N.E.2d 962. Although we do not defer to the post-conviction court's legal conclusions, we review the post-conviction court's factual findings for clear error. *Id.* Accordingly, we will consider only the probative evidence and reasonable inferences flowing therefrom that support the post-conviction court's decision. *Id.*

[9] A claim of ineffective assistance of trial counsel here requires a showing that: (1) Sturgis's trial counsel's performance was deficient by falling below an objective standard of reasonableness; and (2) that the deficient performance prejudiced Sturgis such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 694 (1984). Failure to satisfy either of the two elements will cause the claim to fail. *French v. State*, 778 N.E.2d 816, 824 (Ind. 2002). And when it is easier to dispose of an ineffectiveness claim on the lack of prejudice, then this is the course we should follow. *Trujillo v. State*, 962 N.E.2d 110, 114 (Ind. Ct. App. 2011).

[10] Sturgis argues his trial counsel's performance was deficient when he failed to object to the court's decision to shackle him. Further, Sturgis claims he was prejudiced "both because of the inherent prejudice from being shackled and because the evidence was contested on whether he was guilty of murder or voluntary manslaughter. There is a reasonable probability the result of trial would have been different but for counsel's deficient performance." Appellant's Br. at 27.

[11] Before trial, the State made a motion to place Sturgis in shackles due to news articles that reported incidents of gun violence in other courtrooms, and because Sturgis's case had received public attention. The State's only rationale for shackling Sturgis was reports of other violent incidents that occurred in other states. No specific reason for shackling was provided, contrary to the United States Supreme Court's holding in *Deck v. Missouri*, 544 U.S. 622, 125 S. Ct. 2007, 635 (2005).[2] The post-conviction agreed that placing Sturgis in shackles was not appropriate. Sturgis had no outbursts or anything of that nature in the courtroom, and his only write-up while incarcerated awaiting trial was for one incident of "using obscene, vulgar, abusive language." PCR Tr. pp. 53–54.

---

[2] In *Deck*, 544 U.S. at 635–36, the court held "such restraints may only be used where the use is justified by an essential state interest that is specific to the defendant on trial, and that is supported by specific findings by the trial court." (internal quotations omitted). The failure of the trial court to make a record concerning its shackling order is a serious error, but the fact that the shackles were not visible, and the fact that only one juror inferred that Sturgis was shackled and did not communicate his suspicion to other jurors, together with the overwhelming evidence of Sturgis's heinous crime, combine to make it a harmless error. *See infra*.

Trial counsel objected to the use of shackles at a recorded pre-trial hearing and during an unrecorded pre-trial conference held in chambers. Both objections were overruled. There is nothing in the record that would lead us to conclude that a third objection made at trial would have been sustained. The record indicates that counsel made a tactical decision to not bring attention to the shackles during trial since the trial court overruled counsel's two pre-trial objections. *See* PCR Tr. p. 50.

Moreover, "an ineffective assistance claim based on failure to object to restraints require[s] the restraints to be visible." *Stephenson v. State*, 864 N.E.2d 1022, 1032–1033 (Ind. 2007). "Failure to object to restraints is not substandard performance where the jury is unaware of the restraints." *Id*. at 1033. However, when restraints are "readily visible[,]" failure to object to restraints is substandard performance of counsel. *See Roche v. Davis*, 291 F.3d 473, 482 (7th Cir. 2002) (quoting *Fountain v. United States*, 211 F.3d 429, 435 (7th Cir. 2000)). Here, "petitioner's shackles were not visible."[3] Appellant's App. p. 121.

---

[3] Sturgis sought to admit the affidavit of juror "H.F." which stated he was aware Sturgis was shackled or handcuffed during the trial. *See* PCR Ex. 6. The post-conviction court erred when it concluded that a juror's affidavit was inadmissible under Indiana Evidence Rule 606(b) because Sturgis was not using the affidavit to impermissibly impeach a jury verdict. The affidavit was only being used to establish whether the juror knew that Sturgis was in shackles. However, the post-conviction court's refusal to consider the affidavit is harmless because the juror only speculated that Sturgis was in shackles and there is no evidence in the record that the jury was aware of the juror's suspicion. As the post-conviction court stated in its findings, "[e]ven if jury affidavits could be used to impeach a verdict, no statements appear in the affidavits that Petitioner's shackling was observed or communicated among the jurors." Appellants App. p. 121.

Therefore, counsel's performance was not deficient because he made two pre-trial objections and the shackles were not visible to the jury.

[14] Even if we were to conclude that Sturgis's counsel's failure to object fell "below prevailing professional norms, [Sturgis] has failed to establish a reasonable probability that any such objection would have prevailed; he therefore has not established a reasonable probability that the result [of trial] would have changed." *Stephenson*, 864 N.E.2d at 1027. In other words, trial counsel's failure to object to the shackles at trial had no impact on the jury's guilty verdict.

[15] First, since the evidence against Sturgis is overwhelming, it is unlikely that counsel's failure to object to the use of shackles during trial "deprive[d] [Sturgis] of a fair trial, a trial whose result is reliable." *See Strickland*, 466 U.S. at 687. The fact that Sturgis shot the victim was indisputable. His defense was only that he acted in "sudden heat" and was therefore only guilty of voluntary manslaughter. However, Sturgis was the only person in the assembled crowd who was armed with a gun. Trial Tr. Vol. I, p. 196. Sturgis walked up to the victim and shot him in the neck. *Id*. at 191. The unarmed victim placed his hands on his face and Sturgis shot him again at close range, "in the back of the head." *Id*. at 194.

[16] In addition, as we noted above, the record indicates that none of the jurors *actually* saw Sturgis in shackles, aside from one juror who *inferred* that Sturgis was in shackles. Actual awareness that the defendant was shackled is required for there to be a prejudicial effect. *Stephenson*, 864 N.E.2d at 1034. *cf. Deck*, 544 U.S.

at 622–23 (stating the appearance of the offender in shackles almost inevitably adversely affects the jury's perception of the character of the defendant); *Riggins v. Nevada*, 504 U.S. 127, 142 (1992) (Kennedy, J., concurring in judgment) (noting that through control of a defendant's appearance, the State can exert a "powerful influence on the outcome of the trial"). Because the shackles were not visible or known to the jury, the jury's "thumb on [the scale]" in their decision is not implicated. *Cf. Sochor v. Florida*, 504 U.S. 527, 532 (1992) (stating in these ways, the use of shackles can be a thumb on death's side of the scale).

[17] For all of these reasons, Sturgis has not established that trial counsel's failure to object to the shackles at trial prejudiced him.

## Conclusion

[18] Counsel's assistance was not deficient by an objectively reasonable standard because the record indicates that counsel did, in fact, twice object to Sturgis being shackled before trial, and the shackles were not visible to the jury. Moreover, even if we were to conclude that trial counsel's performance was deficient, Sturgis has not established that he was prejudiced by the allegedly deficient performance. Thus, trial counsel's assistance was not ineffective.

[19] For these reasons, the post-conviction court did not err in denying Sturgis's petition for post-conviction relief.

[20] Affirmed.

Riley, J., and May, J., concur.