In the
United States Court of Appeals
For the Seventh Circuit

Nos. 98-2649 and 99-1933

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ANTHONY HALL and SCOTT WALKER,

Defendants-Appellants.

Appeals from the United States District Court
for the Southern District of Illinois.
No. 96 CR 40094--J. Phil Gilbert, Chief Judge.

Argued January 6, 2000--Decided May 16, 2000

Before COFFEY, FLAUM and KANNE, Circuit Judges.

COFFEY, Circuit Judge.  A federal grand jury returned a fourteen count superseding indictment against co-Defendants Anthony Hall ("Hall") and Scott Walker ("Walker") on July 9, 1997, charging each of them: in Count one with conspiring to distribute methamphetamine and marijuana; and in Count two with conspiring to distribute LSD./1 In Count three, Walker alone was charged with conspiring to distribute LSD, and in Counts five, eight and twelve, he was charged with carrying a firearm in relation to a drug trafficking crime. In Counts nine and eleven, Walker was also charged with possessing methamphetamine with intent to distribute, and in Count ten, he was charged with possessing marijuana with intent to distribute. At the conclusion of a jury trial, a verdict of guilty was returned against Walker on Counts one, two, three, ten and eleven. He argued at his sentencing that he received ineffective assistance of counsel with respect to his plea agreement negotiations and also moved for a downward departure, alleging that an unjustified disparity existed between his sentence and that of one Timothy Conway ("Conway"), a co-conspirator tried and sentenced in a separate, albeit related, case. Following a two-day sentencing hearing, the judge denied Walker's ineffective assistance claim and motion for downward departure, and sentenced him to life on Count one, twenty year concurrent sentences on

Counts two, three and eleven, and five years on Count ten, all sentences ordered to run concurrently and concurrent with each other. With regard to Hall, a jury returned a verdict of guilty against him on Counts one and two. Making no objections to his Presentence Investigation Report ("PSR"), the judge adopted its recommendations and sentenced Hall to 87 months' imprisonment on Counts one and two, ordered to run concurrently and concurrent with each other. We AFFIRM.

I.  BACKGROUND

From 1990 through 1996, as the consummate drug "middleman," Walker was the organizer and leader of a large drug distribution ring and obtained his marijuana, methamphetamine and LSD from various drug sources in Arizona for distribution primarily in southern Illinois. Walker's drug distribution ring consisted of more than 15 participants, including Hall, a dealer himself, and also Conway, one of Walker's Arizona drug suppliers who later became a witness for the government.

Walker and his drug associates typically transported drugs from Arizona to southern Illinois via automobile or commercial airline but on occasion, shipped the drugs through the mail or various shipping companies. As the number of drug dealers and customers associated with Walker increased, he commenced introducing his Arizona drug suppliers to his street dealers and customers in order that they might deal directly. In exchange for Walker's assistance, his drug suppliers paid him a "finder's fee" in both drugs and money./2In sum, federal drug agents estimate that Walker and his drug ring were responsible for distributing approximately 545 kilograms of marijuana, nine kilograms of methamphetamine, 1.3 kilograms of cocaine and 18,700 "hits" (or doses) of LSD between 1993 and 1996. They also estimate that within the conspiracies, a pound of marijuana, an ounce of cocaine and an ounce of methamphetamine each sold for approximately $1,000, while one hit of LSD sold for $5 to customers.

Walker and Hall were arrested by federal law enforcement officers in November 1996. The court at Walker's sentencing incorporated the findings and recommendations of the PSR and concluded that his relevant conduct involved approximately three kilograms of methamphetamine, five thousand doses of LSD, 32 kilograms of marijuana and 200 grams of cocaine. The court also followed the PSR's recommendation that Walker receive a number of upward adjustments: (1) four levels for his leadership role in the offense, (2) two levels for possessing a firearm during the commission of

a drug trafficking offense, (3) two levels for using minors to commit the offense, (4) and two levels for obstructing justice, resulting in a total offense level of 43, accompanied by a criminal history category of III.

Walker moved for a downward departure, arguing that an unjustified disparity existed between his sentence and that of Conway, and claimed that he received ineffective assistance of counsel from his prior attorney, Duane Verity ("Verity"), in negotiating a plea agreement. The court disagreed and found that Verity's representation of Walker was well within the range of competence required of criminal trial attorneys, and also concluded that the disparity between Conway's and Walker's sentences was justified. As the court noted, Conway was sentenced to 71 months' imprisonment resulting from a total offense level of 23 and a criminal history category of III.

With regard to Hall's sentencing, as referred to in his PSR, 19.96 kilograms of marijuana, 580 dosage units of LSD and 126.7 grams of methamphetamine were attributed to his relevant conduct, which resulted in a total offense level of 26, accompanied by a criminal history category of II. Without objection, the judge adopted his PSR's findings and recommendations, but on appeal, Hall argues that his sentencing under the 1997 Sentencing Guidelines violated the ex post facto clause.

II.  ISSUES

On appeal, Walker argues that: (1) the court erred in refusing to grant his motion for a downward departure based on the disparity between his and Conway's sentence; and (2) Verity provided him with ineffective assistance of counsel during plea negotiations. Hall claims that: (1) he should have been sentenced under the less severe 1994 Sentencing Guidelines instead of the 1997 version, which was in effect at the time of his sentencing; and (2) his conviction under Counts one and two is insufficiently supported by the evidence.

III.  DISCUSSION

A.  Defendant Walker

1.  Sentencing Disparity Claim

Walker argues the sentencing judge abused his discretion when he refused to grant him a downward departure based upon the allegedly unjustified disparity between his and Conway's sentences. We have previously held that

a disparity among co-defendants' sentences is not a valid basis to challenge a guideline sentence otherwise correctly calculated. United States v. Edwards, 945 F.2d 1387, 1397-98 (7th Cir. 1991); Smith, 897 F.2d at 911 ("[n]othing in 18 U.S.C. sec. 3742(a) . . . allows review of a sentence imposed in conformity with the Guidelines on grounds that a codefendant was treated differently."). As we noted in United States v. Guerrero, 894 F.2d 261, 267 (7th Cir. 1990), "[t]here is no statement in the legislative history suggesting that sentences within the Guidelines should be reviewed because of a claim that a particular sentence is draconian or too lenient." . . . Even under pre-Guidelines sentencing procedure, disparity among sentences received by co-defendants was grounds for reversal only if the judge failed to give "thoughtful consideration" to the matter, see United States v. Nowicki, 870 F.2d 405, 409 (7th Cir. 1989), and "mere disparity of sentences between co-defendants and co-conspirators cannot alone prove an abuse of [the district court's] discretion." United States v. Coonce, 961 F.2d 1268, 1282 (7th Cir. 1992); see also United States v. Morris, 957 F.2d 1391, 1403 (7th Cir.) (same), cert. denied, 506 U.S. 941, 113 S. Ct. 380, 121 L. Ed. 2d 290 (1992).

United States v. Dillard, 43 F.3d 299, 311 (7th Cir. 1994).

Indeed,

[t]here are two types of disparities: justified and unjustified. A justified disparity is one that results from the proper application of the Guidelines to the particular circumstances of a case. This type of disparity can never be a basis for departure from the Guidelines' sentencing range because it is the application of the Guidelines that created the disparity in the first place.

United States v. Meza, 127 F.3d 545, 549 (7th Cir. 1997) (citations omitted) (emphasis added); see United States v. Krilich, 159 F.3d 1020, 1031 (7th Cir. 1998) ("Differences that occur as a result of a proper application of the Guidelines in light of the prosecutor's charging decisions are never 'unjustified' . . . ."); United States v. Monem, 104 F.3d 905, 911 n.3 (7th Cir. 1997) ("We have held on several occasions that [a disparity between sentences] is not a valid basis on which to challenge a sentence that is otherwise correctly calculated.").

Here, Walker's criminal activity was far more serious than Conway's: initially, let us point out that Conway pled guilty pursuant to a plea

agreement and cooperated with law enforcement authorities by assisting in the investigation and testifying against the defendants, and thus received a total offense level of 23. Walker, on the other hand, was the leader of a large drug conspiracy, refused to cooperate with law enforcement authorities in their investigation and prosecution, used a firearm during his drug trafficking, employed minors to sell and distribute his drugs and went so far as to threaten potential witnesses. Moreover, while Walker was an active participant in the conspiracies for more than four years, Conway's activity was but two years in duration. Thus, Walker received a total offense level of 43, some twenty levels greater than Conway.

Likewise, this court held in Meza that

[when] a defendant's substantial assistance to the government and a defendant's acceptance of a plea agreement are the mitigating sentencing factors, . . . any resulting disparity between the sentences of the coconspirators is the result of the application of these factors. "The Guidelines' goal of national sentencing uniformity is not aimed only at the particular criminal conduct that co-conspirators may share, but also addresses other factors that often vary between co-conspirators" like acceptance of plea agreements and assistance to the government. Justified disparities like these, therefore, can never be a basis for departure from the Sentencing Guidelines as it is the Guidelines that produce the disparity.

Meza, 127 F.3d at 549-50 (citations omitted) (emphasis added). We are convinced that the disparity between Walker's and Conway's sentences is justified, and conclude that the judge did not abuse his discretion in denying Walker's motion for downward departure. See United States v. Gonzalez-Portillo, 121 F.3d 1122, 1123 (7th Cir. 1997).

### 2. Ineffective Assistance of Counsel Claim

Next, Walker essentially argues that his former attorney, Verity, provided ineffective assistance of counsel by failing to procure a plea agreement with the government./3 To make out a successful ineffective assistance of counsel claim, the petitioner must demonstrate that: (1) his counsel's performance fell below an objective standard of reasonableness; and (2) the deficient performance so prejudiced his defense that it deprived him of a fair trial. See Strickland v. Washington, 466 U.S. 668, 688-94 (1984).

With regard to the performance prong, [the] defendant must direct us to the specific acts or omissions which form the basis of his claim. The court must then determine whether, in light of all the circumstances, the alleged acts or omissions were outside the wide range of professionally competent assistance.

Trevino, 60 F.3d at 338. Ineffective assistance of counsel claims are generally frowned upon on direct appeal. See United States v. D'Iguillont, 979 F.2d 612, 614 (7th Cir. 1992). Nonetheless, "[r]egardless of when it is made, because counsel is presumed effective, a party bears a heavy burden in making out a winning claim based on ineffective assistance of counsel." United States v. Trevino, 60 F.3d 333, 338 (7th Cir. 1995).

Claims that an attorney was ineffective necessarily involve inquiries into an attorney's trial strategies, which in turn requires facts which usually are not found in the trial record. As such, many trial tactics, like so many "other decisions that an attorney must make in the course of representation[, are] a matter of professional judgment." United States v. Berkowitz, 927 F.2d 1376, 1382 (7th Cir. 1991). Thus, we resist a natural temptation to become a "Monday morning quarterback." Harris v. Reed, 894 F.2d 871, 877 (7th Cir. 1990).

It is not our task to call the plays as we think they should have been called. On the contrary, we must seek to evaluate the conduct from counsel's perspective at the time, and must indulge a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.

United States v. Ashimi, 932 F.2d 643, 648 (7th Cir. 1991) (citations and quotations omitted).

Should the petitioner satisfy the performance prong, he must next fulfill the prejudice prong and demonstrate "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." United States v. Starnes, 14 F.3d 1207, 1210 (7th Cir. 1994). "In making the determination whether the specified errors resulted in the required prejudice, a court should presume . . . that the judge or jury acted according to law." Strickland, 466 U.S. at 694.

During Walker's two-day sentencing hearing, the judge heard the testimony of a number of witnesses, including Verity, and became aware of his version of the plea agreement question and proceeded to find reliable his description that

both the government and Walker were "intractable" about plea negotiations and that each time he discussed the option of pleading guilty with Walker, the defendant demanded to go to trial unless the government agreed not to insist on any prison time. Further, even though Walker presented affidavits from various family members and friends stating that he would have accepted a plea agreement if one had been offered, he does not dispute the fact that the government never offered a plea agreement. After considering the evidence offered at the sentencing hearing and the documents presented on this issue, the court concluded that no formal plea agreement was offered to Walker, and also determined that Walker remained steadfast in refusing to ever consider any plea agreement involving time in a federal prison.

We are convinced from our review that Walker's counsel's representation did not fall below an objective standard of reasonableness. Indeed, Verity testified that his attempts to successfully negotiate a plea agreement were also stymied by Walker himself, through his unreasonable demand that despite his extensive drug activity, he avoid any and all jail time. Further, the successful negotiation of a plea agreement involves factors beyond the control of counsel, including the cooperation of his client, clearly absent here, as well as the cooperation of the prosecutor, who has no obligation to offer such an agreement. See United States v. Springs, 988 F.2d 746, 749 (7th Cir. 1993) ("Prosecutors need not offer discounts and may withdraw their offers on whim. Defendants have no substantive right to bargain-basement sentences."); see, e.g., United States v. Webb, 1997 WL 417356, at *1 (10th Cir. July 25, 1997) ("[B]ecause negotiating such a plea would require the cooperation of both the government and district court--neither of which have any obligation in that regard--the ability to obtain a conditional plea agreement was beyond [the] attorney's control."). Bearing in mind that "Congress has dictated and we agree that severe sentences must be imposed for such offenders if we hope to halt the cancer of drugs on humanity," United States v. Tolson, 988 F.2d 1494, 1505 (7th Cir. 1993), we are of the opinion that it is axiomatic that the government is not bound to discuss, much less enter into, a plea agreement because there are people who truly belong behind bars due to the serious harm they pose to society, especially those who choose to "poison the community with the sale of illegal drugs." United States v. O'Grady, 812 F.2d 347, 355 (7th Cir. 1997).

It is also evident that following Verity's withdrawal as counsel, Walker's successor counsel had several months to negotiate a plea agreement

but obviously failed to for reasons not specifically set forth in the record, other than suggesting that Walker's continual insistence that he not serve jail time or that the government's refusal to offer a plea bargain was the reason why a plea agreement never became a reality. Accordingly, because Walker instructed Verity that he would not accept any plea agreement that included any jail time and no prosecutor is ever under any obligation to consider much less offer a plea bargain, Walker has failed to demonstrate that Verity's assistance fell below an objective standard of reasonableness. We reject Walker's ineffective assistance of counsel claim./4

B.  Defendant Hall

    1. Hall's Challenge to His Sentencing Under the 1997 Guidelines

    Hall contends that his sentencing under the 1997 Sentencing Guidelines violated the ex post facto clause because he was not an active participant in the conspiracy to distribute methamphetamine and marijuana after June 1995, and thus, the less severe 1994 Guidelines should have been applied to his sentencing. We note at the outset that Hall raises this challenge for the first time on appeal, and thus, it is deemed waived and the plain error standard applies. See United States v. Rivero, 993 F.2d 620, 623 (7th Cir. 1993). Nevertheless, "[a] sentence based on an incorrect guideline range constitutes an error affecting substantial rights and can thus constitute plain error." United States v. Robinson, 20 F.3d 270, 273 (7th Cir. 1994); see United States v. Aman, 31 F.3d 550, 557 (7th Cir. 1994).

    As a general rule, a court imposes a sentence based on the guidelines in effect as of the date of sentencing. See U.S.S.G. sec. 1B1.11(a). But if "the court determines that use of the Guidelines Manual in effect on the date that the defendant is sentenced would violate the ex post facto clause [(i.e., "subject the defendant to increased punishment")] . . ., the court shall use the Guidelines Manual in effect on the date that the offense of conviction was committed." sec. 1B1.11(b)(1), cmt. (backg'd); see United States v. Kezerle, 99 F.3d 867, 870 (7th Cir. 1996); United States v. Brassell, 49 F.3d 274, 277 (7th Cir. 1995); United States v. Seacott, 15 F.3d 1380, 1384 (7th Cir. 1994).

    To resolve Hall's claim,/5 we must initially determine the date of the occurrence of Hall's criminal offense and determine if the version of the sentencing guidelines in effect at that time

would have resulted in a less severe penalty because the "retroactive application of a harsher sentencing guideline contravenes the very purpose of the Ex Post Facto Clause." Seacott, 15 F.3d at 1384. Hall contends that his active participation in the conspiracy to distribute methamphetamine and marijuana ended as of June 1995, when the 1994 Guidelines were still in effect.

It is evident from the charging papers and the record, however, that Hall was charged and convicted of conspiring to distribute methamphetamine and marijuana from June 1993 to November 1996. We also note that Hall did not raise any objections to the information contained in his PSR, which concluded that the drug conspiracy charged in Count one continued from 1993 through August 1996.

Indeed, a court may adopt

the factual findings and calculations contained in a PSR, provided that those findings are based upon sufficiently reliable information. United States v. LaGrone, 43 F.3d 332, 340 (7th Cir. 1994); Zarnes, 33 F.3d at 1474; United States v. Musa, 946 F.2d 1297, 1308 (7th Cir. 1991). In fact, when a defendant has failed to produce any evidence calling the report's accuracy into question, a district court may rely entirely on the PSR. . . . In the absence of actual evidence controverting the information in the PSR, i.e., something more than the appellants' mere denials, it was not necessary for the court to conduct any further inquiry into the disputed sentencing issues.

United States v. Taylor, 72 F.3d 533, 547 (7th Cir. 1995).

Further, the evidence presented at trial established his participation in the conspiracy during the period charged in the indictment (Count one: from 1993 through 1996). Regardless of the date of the occurrence of his final criminal act, as a member of a conspiracy, Hall's relevant conduct for sentencing purposes includes "all reasonably foreseeable acts . . . of others in furtherance of the jointly undertaken criminal activity, that occurred during the commission of the offense of conviction." U.S.S.G. sec. 1B1.3(a)(1)(B).

It is not, however, all that easy to withdraw from a conspiracy. Withdrawal requires an affirmative act to either defeat or disavow the purposes of the conspiracy, such as making a full confession to the authorities or communicating to co-conspirators that one has abandoned the enterprise. United States v. Patel, 879 F.2d 292,

294 (7th Cir. 1989). Merely ceasing participation in the conspiracy, even for extended periods, is not enough. Id.

United States v. Bafia, 949 F.2d 1465, 1477 (7th Cir. 1991) (emphasis added). The burden to establish withdrawal from a conspiracy remains firmly on the defendant even once it appears that he has been expelled from the conspiracy. See United States v. Schweihs, 971 F.2d 1302, 1322-23 (7th Cir. 1992). It is evident that other than his bald assertion to the contrary, the record is devoid of any evidence that demonstrates that Hall affirmatively disavowed the purposes of the conspiracy.

For these reasons, we reject Hall's assertion that his involvement in the conspiracy ended in 1995, and conclude that he remained a member of the conspiracy until its end in 1996, and for purposes of sentencing, is responsible for the reasonably foreseeable offenses of his coconspirators, which also carried through 1996. See U.S.S.G. sec. 1B1.3(a)(1)(B). We hold that the sentence the court imposed upon Hall under the 1997 Guidelines was not in violation of the ex post facto clause for this version of the Guidelines was in effect at the time of his sentencing./6

2.    Sufficiency of the Evidence Presented at Trial

Essentially, Hall argues that the government failed to present evidence that supports his conviction on the specific conspiracies set forth in Counts one and two. In reviewing Hall's sufficiency of the evidence claim, we are cognizant of the fact that Hall "faces a nearly insurmountable hurdle," United States v. Moore, 115 F.3d 1348, 1363 (7th Cir. 1997), because

[w]hen reviewing a conviction for sufficiency of the evidence, we neither reweigh the evidence nor do we substitute our judgment of the facts for that of the factfinder. See United States v. Hatchett, 31 F.3d 1411, 1416 (7th Cir. 1994). We consider the evidence in the light most favorable to the prosecution, making all reasonable inferences in its favor, and affirm the conviction so long as any rational trier of fact could have found the defendant to have committed the essential elements of the crime. See Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L. Ed. 2d 560 (1979). Reversal is warranted "'only when the record is devoid of any evidence, regardless of how it is weighed, from which a jury could find guilt beyond a reasonable doubt.'" United States v. Garcia, 35 F.3d 1125, 1128 (7th Cir. 1994) (quoting United States v. Gutierrez,

978 F.2d 1463, 1468-69 (7th Cir. 1992)).

United States v. Masten, 170 F.3d 790, 794 (7th Cir. 1999).

We conclude that there was more than sufficient evidence presented at trial to support Hall's conviction of conspiring to distribute methamphetamine and marijuana, as well as conspiring to distribute LSD because a number of witnesses (at least six) testified that Hall was involved with Walker and his drug associates in the conspiracies to purchase and distribute drugs. Further, at least five of Hall's former drug co-conspirators, including Conway and McRoy, later became cooperating witnesses against the defendants and testified that on numerous occasions during 1994 and 1995, Hall traveled by himself and at times with other co-conspirators to Arizona to purchase marijuana, methamphetamine and LSD.

Hall also contends that the testimony of the government informant who testified against him at trial was perjurious. He does not take issue with the heart of the informant's testimony, describing Hall as a drug dealer, but challenges the informant's testimony that relates to Hall attacking the informant and the informant's wife at a bar./7 It is evident from the record that the informant's testimony on this issue can at worst be classified as confused, which was brought out to the attention of the jury by Hall's counsel during cross-examination. Let us also point out that this portion of the informant's challenged testimony relates only to a collateral, inconsequential event that does not pertain to the drug conspiracies in which Hall was involved. Indeed, the informant's confused testimony on a non-material event clearly does not constitute perjury. See United States v. Dunnigan, 507 U.S. 87, 94 (1993) ("A witness testifying under oath or affirmation [commits perjury] if he or she gives false testimony concerning a material matter with the willful intent to provide false testimony, rather than as a result of confusion, mistake or faulty memory.") (emphasis added). Because the record contains more than sufficient evidence from which a rational jury could have concluded that Hall committed the crimes charged in Counts one and two, see Masten, 170 F.3d at 794, we reject his sufficiency of the evidence challenge to his conviction.

IV.  CONCLUSION

We hold that the trial court properly exercised its discretion when it refused Walker's motion for a downward departure, and properly rejected

his ineffective assistance of counsel claim. As to Hall, we hold that the court's application of the 1997 Guidelines to his sentencing was proper and that his convictions for the conspiracies charged in Counts one and two of the indictment are amply supported by the evidence received at trial. Walker's and Hall's convictions and sentences are AFFIRMED.

/1 The indictment also charged four other co-conspirators who are not involved in this appeal.

/2 As early as January 1994, Hall also made frequent trips to Arizona with Walker and other drug associates to purchase cocaine, LSD, marijuana and methamphetamine from Walker's drug sources, including Conway. Like Walker, Hall would travel to Arizona to purchase drugs, transport drugs himself or arrange for the transport of drugs back to Illinois.

According to the testimony of a confidential informant, during May and June of 1995, the informant made controlled buys of cocaine, LSD, and marijuana from Hall and Christopher McRoy ("McRoy"), a co-conspirator who later also became a cooperating witness for the government. McRoy and Hall were arrested and charged with state drug charges resulting from the informant's cooperation.

The informant testified at trial that shortly after Hall and McRoy were released on bail, they threatened him with death. The informant also testified that McRoy "beat him up" while Hall physically assaulted his wife.

/3 Walker's only claim dealing with ineffective assistance of counsel is that Verity was not able to procure a negotiated plea agreement.
/4 Walker also argues that "the district court erred in failing to hold an evidentiary hearing on whether [Verity] provided constitutionally ineffective assistance of counsel." It is evident from the record, however, that during a two-day sentencing hearing, the court in fact fully considered Walker's moving papers and affidavits submitted in support of his claim, together with the government's responses, as well as heard testimony from Verity and considered Walker's offer of proof. Thus, we conclude that Walker's argument is without merit.

/5 We note that Hall's ex post facto challenge relates only to his sentencing for Count one, conspiring to distribute methamphetamine and marijuana.

/6 As referred in Hall's PSR, "[t]he 1997 edition of the Guidelines Manual has been used in this case. The conversion of different drug types to [marijuana] equivalents results in the same base offense level as the 1995 edition of the Guidelines Manual." (emphasis added).

/7 Hall specifically challenges the informant's failure to recall the exact date when the alleged assault occurred.