**UNITED STATES of America,**
**Appellee,**

v.

**Linton Maurice HARGROVE,**
**Appellant.**

**No. 01–1894.**

United States Court of Appeals,
Third Circuit.

Argued Dec. 7, 2001.

Opinion Filed Jan. 29, 2002.

Richard Biggs (argued), Law Office of Marcia G. Shein, Decatur, GA, for Appellant.

John Minges, (argued), Assistant United States Attorney, Philadelphia, PA, for Appellee.

Before MANSMANN, ROTH, and FUENTES, Circuit Judges.

MEMORANDUM OPINION

FUENTES, Circuit Judge.

Defendant Linton Maurice Hargrove, who entered an open guilty plea to all three counts of his indictment, appeals his sentence of 135 months for distribution and possession with intent to distribute "cocaine base, crack" in violation of 21 U.S.C. § 841(a)(1). On appeal, Hargrove raises two issues: 1) whether the District Court improperly determined that the government had established by a preponderance of the evidence that the cocaine base charged to Hargrove was, in fact, "crack",

as defined by the Sentencing Guidelines; and 2) whether the District Court erred in imposing a two-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(1) for the possession of a dangerous weapon during the offense. Discerning no error, we affirm.

I.

The facts of this case are not largely disputed. On May 7, 1998, during a recorded conversation, Hargrove agreed to sell two ounces of crack cocaine to a Drug Enforcement Administration ("DEA") cooperating witness. That day, the cooperator went to Hargrove's residence at 513 Emily Street, where he bought two ounces of crack cocaine from Hargrove for $1,700. The cooperator then left the property and turned the drugs over to the DEA. On May 12, 1998, the cooperator again went to Hargrove's residence, where Hargrove supplied him with one ounce of cocaine for $800. These drugs were also turned over to the DEA when the cooperator left the property. In the third controlled transaction, on May 13, 1998, Hargrove agreed to sell three quarters of a pound of crack cocaine to the cooperator for $2,900.

As police arrived with a search warrant, Hargrove started to run down Emily Street. After a short chase, Hargrove was arrested, and police recovered two bags containing 109 grams of cocaine and $390.00 from his pockets. During a search of Hargrove's home, police recovered two loaded semi-automatic handguns, a bag containing $6,000.00 in cash, a triple-beam scale, packaging material, and an empty box of baking soda. Police also seized the Mercedes-Benz auto that Hargrove had operated just before his arrest. On April 28, 1999, a federal grand jury issued a three-count indictment against Hargrove.

On January 10, 2000, the day before his scheduled trial was to begin, Hargrove appeared in the District Court, and entered a plea of guilty to all three counts of the indictment. During the guilty plea, the court explained the nature of the proceedings and the nature of the charges. The court stated the date of each offense, that each involved cocaine base ("crack"), and the weight of the drugs involved in each count of the indictment. The defendant acknowledged that he understood the charges against him. The court explained the elements of the offense and identified the drugs involved as cocaine base, crack. Hargrove admitted that he distributed "cocaine base, crack" on May 7 and May 12, 1998, and that he possessed 109 grams of "cocaine base, crack" on the date of his arrest. Following the plea, the court scheduled a hearing to address the issues of whether the drugs involved in the offense conduct were the "crack" form of cocaine base and whether firearms recovered from inside Hargrove's home were sufficiently related to the offense to warrant a two-point enhancement under U.S.S.G. § 2D1.1(b)(1).

At the sentencing hearing, the government presented three witnesses to establish drug identity: Detective Freddy Chaves, Christine Chiesa, a DEA forensic chemist, and Edward Dugan, a forensic scientist for the Philadelphia Police Department. Hargrove presented his own expert, who testified that the lack of sodium bicarbonate in the drug made it highly unlikely that the drug was "crack". Following the hearing, the court adopted the factual findings and recommendation in the presentence report. The court determined, under a preponderance of the evidence standard, that based on evidence and the presentence report, Hargrove is criminally responsible for 184.6 grams of cocaine base ("crack"). The court, therefore, assigned Hargrove a base offense level of 34 in accordance with U.S.S.G. § 2D1.1 Drug Quantity Table. The Dis-

trict Court then applied a two-point increase for the weapons possession charge and a three level decrease for acceptance of responsibility, for a total offense level of 33. Hargrove's adjusted offense level resulted in a sentencing range of 135 to 168 months. The District Court sentenced Hargrove to the bottom of that range, the guideline minimum of 135 on each of the counts of the indictment, all to be served concurrently. Hargrove appeals the sentence.

II.

We begin our analysis with Hargrove's primary contention that the District Court erred in concluding that the government established by a preponderance of the evidence that the cocaine base chargeable to him was, in fact, crack cocaine as defined in the federal sentencing guidelines.

In sentencing Appellant, the District Court determined that Hargrove was criminally responsible for trafficking in the "crack" form of cocaine base. See U.S.S.G. § 2D1.1. A note to the drug quantity table at § 2D1.1(c) defines "cocaine base," for the purposes of the guideline, as "crack," which is "the street name for a form of cocaine base, usually prepared by processing cocaine hydrochloride and sodium bicarbonate, and usually appearing in a lumpy, rocklike form." U.S.S.G. § 2D1.1(c), note d. To invoke the harsher sentencing provisions of § 2D1.1, the government must establish that the cocaine base involved was crack by a preponderance of the evidence. See, e.g., *United States v. Holman,* 168 F.3d 655, 658 (3d Cir.1999) ("To carry its burden, the government must present reliable and specific evidence that the substance in question is 'crack' "); *James,* 78 F.3d at 858.

Here, we are completely satisfied that the government has met its burden. We note first that the term "crack" appears in each of the three counts in the indictment to which Hargrove pled guilty. At the plea hearing, the district court explained the essential elements of the offenses charged in the indictment:

> THE COURT: Now, the essential elements which the government must prove for each of the charges are these. Counts 1 and 2 charge ... distribution of cocaine base, crack.... One, that you knowingly and intentionally distributed the controlled substance named in the indictment. And two, that at [t]he time of the distribution and that is May 7th and May 12th, 1998, you knew that the substance you distributed was a controlled substance. Do you understand that?
>
> DEFENDANT: Yes.
>
> THE COURT: Count 3 charges possession with intent to distribute cocaine base, crack. The government must prove these essential elements in order to obtain a conviction of that crime. One, that you possessed the controlled substance described in the indictment. Two, that you knew that the substance was a controlled substance. And three, that you intended to distribute this controlled substance. Do you understand that?
>
> THE DEFENDANT: Yes, Sir.

(See Appellee's Brief, citing to the plea hearing transcript, at 13–14). The court further questioned Hargrove as to the factual circumstances underlying the three counts of the indictment:

> THE COURT: All right, now let me ask you some questions. First, May 7, did you agree to distribute two ounces of cocaine base, crack on May 7, 1998?
>
> THE DEFENDANT: Yes.

THE COURT: And did you distribute two ounces of cocaine base, crack on May 7th, 1998?

THE DEFENDANT: Yes.

THE COURT: Did you agree to distribute one ounce of cocaine base, crack on May 12th, 1998?

THE DEFENDANT: Yes.

THE COURT: And did you distribute one ounce of cocaine base, crack on that date, May 12, 1998?

THE DEFENDANT: Yes.

THE COURT: And is it correct that you were paid $850 for that cocaine base or crack and that you paid back $50 to the person to whom you sold it?

THE DEFENDANT: Yes.

. . . .

THE COURT: On May 14, 1998, did you agree to sell three quarters of a pound of cocaine base, crack to someone at your home, 513 Emily Street, Philadelphia?

. . . .

THE COURT: Let me go through it, yes, please. Did you possess on May 14th, 1998, approximately 109 grams of cocaine base crack?

THE DEFENDANT: Yes.

. . . .

THE COURT: Did you possess that 109 grams of cocaine base, or crack, on May 14, 1998 with the intent to distribute it in the future?

THE DEFENDANT: Yes.

(See *id.* at 14–15, 17).

We reject Hargrove's contention that use of the terms "cocaine base or crack" and "cocaine base, crack" does not prove that the substance involved was "crack," even though he answered the court's questions affirmatively. Merely because the judge or the Government did not refer to the substance by one name consistently, or because they used the terms interchangeably, does not mean that the clear meaning and import of the charge contained in the indictment were not communicated to the defendant. In this regard, we are in complete agreement with the Seventh Circuit's observation that the use of more general terms does not necessarily make suspect the conclusion that the substance was crack cocaine:

> While precise language is always preferred, we do not live in a world in which people use only the most specific term when speaking. A witness using the term "drug" or "dope" or "cocaine" in addition to the term "crack" does not mean that the substance about which she is speaking is not crack cocaine. In light of the additional evidence before the district court, the use of the various terms alone is not enough to demonstrate that the witnesses, attorneys, and defendant did not know what the substance was or believed it to be something other than crack cocaine.

*United States v. Earnest,* 185 F.3d 808, 812 (7th Cir.1999) (emphasis added). Here, the record of the plea hearing clearly establishes that Hargrove entered a knowing and willing plea and that he knowingly trafficked in "crack" cocaine on the three occasions charged in the indictment. As this Court has stated in a similar vein:

> The indictment charged [defendant] with distributing crack. It is clear from the transcript of the plea-taking proceedings that he understood this and that his plea was voluntary. A knowing and voluntary plea constitutes an admission of all material facts alleged in the indictment, even where those facts are not essential elements of the offense charged. See *United States v. Dickler,* 64 F.3d 818, 823 n. 7 (3d Cir.1995); *United States v. Parker,* 874 F.2d 174 (3d Cir.1989). There was a further admission that the substance distributed was crack when Faulks agreed with the

government's account of the factual basis for the plea. These admissions provide ample evidentiary support for the district court's finding on the subject.

*United States v. Faulks,* 143 F.3d 133, 138–39 (3d Cir.1998) (emphasis added). See also *United States v. Gray,* 182 F.3d 762, 768 (10th Cir.1999) (holding that where a count of the indictment specifies "cocaine base, 'crack,'" and defendant pleads guilty to that count, the admission relieves the government of any burden it had at sentencing to show that the drug involved was crack).

We note further that at no time during the plea colloquy did defendant or his counsel object to the terminology employed by the Government or the District Court. See *United States v. Stafford,* 258 F.3d 465, 472 (6th Cir.2001) (upholding plea after noting consistent failure of defendant or his counsel to raise any sort of objection to the court's drug terminology).

In addition to the defendant's admission at the plea colloquy, there was substantial other evidence supporting the court's sentencing decision. We first note that while Hargrove's expert, a former DEA Agent, testified that the cocaine base recovered could not possibly be crack because no sodium bicarbonate was present in the sample, there is no mandate set forth by the Sentencing Guidelines that sodium bicarbonate must be present to support the identification of a substance as crack. Moreover, the evidence and testimony presented by the Government was both compelling and persuasive. Detective Chaves, who had sixteen years conducting narcotics investigations in Philadelphia, testified that after examining the drug exhibits and studying the chemistry reports in Hargrove's case, he could identify the drug trafficked by Hargrove as crack. Further, forensic scientist Edward Dugan testified that the chemical properties and behavior that he had observed in the drug samples seized from Hargrove's transactions were entirely consistent with the cocaine base having been prepared with water and sodium bicarbonate. Christine Chiesa, a DEA forensic chemist, testified that upon examination of the sample, she, too, had determined the drug to contain cocaine base and to appear as a lumpy, chunky, and rocklike material. This evidence more than adequately supports the court's finding that the substance with which Hargrove was involved was crack.

## III.

Appellant next challenges the two-level enhancement in his offense level due to the presence of two firearms. See U.S.S.G. § 2D1.1(b)(1). Under the Sentencing Guidelines, a "Specific Offense Characteristic" used in drug offenses states that "[i]f a dangerous weapon (including a firearm) was possessed, increase by two levels." U.S.S.G. § 2D1.1(b)(1). Application Note 3 to this provision states that "[t]he enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons," and notes that "[t]he adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." Appellant argues that no evidence presented during his Sentencing Hearing demonstrates that he possessed a weapon during the first two drug transactions recited in the indictment. On the issue of Count Three of the indictment, Hargrove contends that the Government failed to prove that the two weapons found inside of the house at 513 Emily Street were connected with the offense. Specifically, he claims that since he was not inside the house, there was no basis for Chaves's testimony that the guns were "readily available if they were needed".

Appellant's arguments are meritless. As we have previously pointed out,

as long as the government can establish that a weapon was present and its connection with the offense was not "clearly improbable," it does not need to prove that the weapon was actually used in relation to the charged offense. See, e.g., *United States v. Price,* 13 F.3d 711, 732–33 (3d Cir.1994); *United States v. Demes,* 941 F.2d 220, 223 (3d Cir.), *cert. denied,* 502 U.S. 949, 112 S.Ct. 399, 116 L.Ed.2d 348 (1991). See also *United States v. Snyder,* 913 F.2d 300, 303–04 (6th Cir.1990), *cert. denied,* 498 U.S. 1039, 111 S.Ct. 709, 112 L.Ed.2d 698 (1991) (noting that actual possession is not required and that "the government need only show Snyder's constructive possession of the firearms to warrant a section 2D1.1(b) adjustment").

Here, it was clear that the police informant purchased the drugs from Hargrove inside 513 Emily Street, Hargrove's home, on two occasions, and was supposed to meet him at that address on the date of the third occasion. When he was arrested, police searched his home and found a loaded pistol concealed in a couch in the living-room and a second loaded pistol on top of an entertainment center which concealed $6000. Also, in the home's basement, police found a triple beam scale, and other drug paraphernalia. The government's witness testified that drug dealers frequently use weapons to protect themselves from competition. On this record, we conclude that the District Court's factual findings were not clearly erroneous and that the court did not err in imposing a two-level firearms enhancement.

## IV.

For the foregoing reasons, we will affirm the sentence imposed by the District Court.