322

**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Eugenia JENNINGS, Defendant–
Appellant.**

**No. 01–1570.**

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 3, 2001.

Decided Feb. 25, 2002.

Before BAUER, COFFEY, and DIANE P. WOOD, Circuit Judges.

ORDER

After pleading guilty to two counts of distributing 13.9 grams of crack, Eugenia Jennings, a mother of three, argued that her family responsibilities warranted a downward departure from the mandated imprisonment range. The district court, citing *United States v. Wright*, 218 F.3d 812 (7th Cir.2000), refused to grant the departure. Jennings argues on appeal that the district court misapprehended the scope of its discretion to depart after *Wright.* We have jurisdiction over appeals from decisions not to depart only where the district court's decision is based on a legally erroneous belief that it lacked, for example, the *authority* to depart. Because the record establishes that was not the case here, for the district court was well aware of the relevant case law and of its continuing discretion to depart, we dismiss this appeal for lack of jurisdiction.

Jennings's legal troubles began in February 2000, when police and DEA agents in Alton, Illinois, learned from a confidential source that she routinely traded crack cocaine for designer clothing. The police arranged for the confidential source to trade clothing to Jennings, and on February 19 the source exchanged $157 worth of clothing for 1.3 grams of crack. Five days later the source received another 12.6 grams of crack from Jennings for $1,000 worth of clothing.

In June 2000 the government filed a two-count indictment charging Jennings with distributing crack in violation of 21 U.S.C. § 841(a)(1), and Jennings pleaded guilty to the charges. Jennings's two prior state felony convictions for distributing

crack qualified her as a career offender under U.S.S.G. § 4B1.1. After she was granted a three level reduction in offense level for acceptance of responsibility, Jennings faced a mandated imprisonment range of 262 to 327 months.

Prior to sentencing defense counsel moved for a downward departure principally because of Jennings's responsibility for her three children, then ages two, six, and seven. Before defense counsel could argue this motion at sentencing, however, the court stated:

> I just want to bring the *United States versus Wright* [ ] opinion to everyone's attention.... [B]asically what [*Wright*] says is in these family circumstance cases is if you take that into account, and even if you get a downward departure, you're still going to be imprisoned for a long time. Why bother? Because the damage to the children is there. And whether you get out when you're 20 years old or 15 years old it just really doesn't matter because the damage has been done. And that's a hard way of looking at things but that's what I understand the law to be.

Defense counsel then proceeded to argue that, under U.S.S.G. § 5K2.0 and § 5H1.6, Jennings's family responsibilities entitled her to a downward departure. Counsel reasoned that Jennings's two-year-old child had been with her since his birth, and that she alone was responsible for raising the child. Furthermore, counsel argued, if the court were to grant the requested departure, Jennings might leave prison in a little over seven years, giving her a chance to re-enter her youngest child's life when he was just nine years old.

The court considered and weighed this argument and refused Jennings's departure request, relating that the case was "controlled by *Wright* and there is nothing this court could do or [is] of a mind to [do]

that is going to assist the defendant's children in any way, and that's a sobering thought." The court sentenced Jennings to concurrent 262–month terms, the low end of the mandated range, as well as imposing a term of supervised release for a period of six years for Count I and eight years for Count II, also to run concurrently with each other, and a fine of $1,750.

Jennings now argues that the above statement among others indicates that the district court erroneously believed *United States v. Wright* stripped it of discretion to downwardly depart in her case. She acknowledges that we generally do not have jurisdiction to hear an appeal from a decision not to depart. *United States v. Jaderany*, 221 F.3d 989, 994 (7th Cir.2000). Rather, appellate review is appropriate only where it appears from the record that a district court based its decision not to depart "on a legally erroneous belief that the court did not have the power to depart." *United States v. Hall*, 109 F.3d 1227, 1238 (7th Cir.1997).

Section 5H1.6 of the sentencing guidelines states that "family ties and responsibilities and community ties are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range." U.S.S.G. § 5H1.6. In *Wright*, 218 F.3d at 812, we were called upon to consider whether a district court appropriately decided to depart under this guideline. The court had sentenced a single mother to 170 months of incarceration, a significant downward departure from the guidelines's presumptive range of 235 to 293 months. The trial judge based this departure on what he termed the defendant's "extraordinary family circumstances." These extraordinary family circumstances consisted of the defendant's relationship with her seven-year-old son, who had become "anxious and depressed as a result of learning that his mother may

possibly not continue to live with him." *Id.* at 814.

In reversing the district court's sentencing departure, initially we noted that a downward departure based on a defendant's responsibility for a child is justified only if two conditions are met: (1) the harm to the child from incarcerating the defendant must be greater than the harm to a normal child; and (2) care from other sources must be unavailable to alleviate that harm. *Wright* at 815 (citing *United States v. Stefonek,* 179 F.3d 1030, 1038 (7th Cir.1999)). Applying this standard, we concluded that the anticipated harm to the seven-year-old in *Wright* was nothing more than the harm any normal seven-year-old would suffer from having his only parent incarcerated. *Id.*

Furthermore, we noted in *Wright* that even if the defendant's sentence was reduced to 170 months, the seven year old would still have been deprived of his mother until he was 19 years old. Even with such a reduction, "the parental bond and support are sundered, and someone other than his mother must raise the child to maturity." *Id.* Thus, "taking a few years off a long sentence is worthless to children and costly to the program of proportionate punishment under the guidelines." *Id.* Based on this reasoning, we held that "a downward departure for extraordinary family circumstances cannot be justified when, even after reduction, the sentence is so long that release will come too late to promote the child's welfare." *Id.*

A reading of the sentencing transcript in this case reveals the district court's proper understanding of *Wright* and of its continuing discretion to depart after that case. First of all, the district court accurately described the holding in *Wright* during the sentencing hearing. In referring to this opinion the court was appropriately taking "note of the boundary of the heartland" and being "mindful of other cases that have delineated the parameters of the heartland," *Jaderany,* 221 F.3d at 997, before making its determination as to whether Jennings's situation was within that heartland.

Second, the district court stated that "This case is controlled by *Wright* and there is nothing this court could do or [is] of a mind to [do] that is going to assist the defendant's children in any way." This statement, particularly its reference to the court having "a mind" to do or not do something, evidences the court's understanding that it had discretion to depart after *Wright.* Read in context, this statement reflects the court's belief that a departure would not benefit Jennings's children because of Jennings's history of recidivism. Indeed, the court predicted that the supervision term of Jennings's sentence would essentially guarantee "that once she is released from prison years down the road she's going to be right back, because the chance of this defendant ever completing supervised release for eight years is so remote it's just not going to happen." These bleak predictions influenced the trial judge in his determination that departing would not benefit Jennings's children. Considering these predictions alongside other findings of fact, the judge ultimately located Jennings's case in the heartland of cases for which downward departures are inappropriate exactly the type of discretionary determinations required after *Wright.*

We do not judge the correctness of these determinations, nor of the district court's refusal to depart. *United States v. Atkinson,* 259 F.3d 648, 653–54 (7th Cir. 2001). Our jurisdiction ends once we determine that the district court understood that *Wright* required no particular outcome, only an examination of the potential impact of a departure on the defendant's

children. There are instances where we may not agree with the district court's ultimate discretionary call, but the record reveals that the court understood that it had continuing discretion in deciding whether to depart in this case. This appeal is therefore DISMISSED.