Eugenia JENNINGS, Petitioner,

v.

**UNITED STATES of America, Respondent.**

**Civ. No. 03–116–GPM.
Crim. No. 00–30122–GPM.**

United States District Court, S.D. Illinois.

Sept. 26, 2006.

John Sandberg, Sandberg Phoenix & Vongontard PC, St. Louis, MO, for Petitioner.

Suzanne M. Garrison, Assistant U.S. Attorney, Fairview Heights, IL, for Respondent.

### MEMORANDUM AND ORDER

MURPHY, Chief Judge.

This matter is before the Court on the motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct sentence brought by Eugenia Jennings (Doc. 1). For the following reasons, the motion is **DENIED**.

#### INTRODUCTION

On October 10, 2000, Eugenia Jennings entered an open plea of guilty to two counts of distributing crack cocaine, in violation of 21 U.S.C. § 841(a)(1). At the plea hearing, Jennings admitted that in Alton, Illinois, on separate occasions in February 2000 she gave 1.3 grams and 12.6 grams of crack cocaine to a confidential informant working with the United States Drug Enforcement Administration and the Alton Police Department in return for designer clothing worth slightly more than $1,000. Because Jennings had two prior felony convictions for selling crack, she was eligible to be sentenced as a ca-

reer offender under section 4B1.1 of the United States Sentencing Guidelines. Although Jennings originally faced a prison sentence of between thirty years and life, as a result of her guilty plea she received a three-level reduction in her offense level for acceptance of responsibility, bringing her down to a sentencing range of 262 to 327 months in prison. Jennings was sentenced to 262 months.

Jennings subsequently appealed from the Court's refusal to grant her a downward departure based upon her family ties and responsibilities, but the appeal was dismissed for lack of jurisdiction. *See United States v. Jennings,* 39 Fed.Appx. 322 (7th Cir.2002). Jennings now has filed a timely motion to vacate, set aside, or correct her sentence pursuant to 28 U.S.C. § 2255, alleging that her guilty plea and sentence were the result of ineffective assistance by her attorney, John Delaney.[1] On December 1, 2004, the Court directed the government to respond to Jennings's motion; the government did so on January 25, 2005, whereupon Jennings filed a reply. Although counsel was appointed for Jennings and she was granted leave to file an amended motion for section 2255 relief, Jennings, presumably upon the advice of her attorney, has elected to stand upon her original pro se motion and supporting briefs.

■ An evidentiary hearing on a motion brought pursuant to 28 U.S.C. § 2255 is not required if the "motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255. *See also Bruce v. United States,* 256 F.3d 592, 597 (7th Cir.2001); *Daniels v. United States,* 54 F.3d 290, 293 (7th Cir.1995). Further, "in order for a hearing to be granted, the petition must be

accompanied by a detailed and specific affidavit which shows that the petitioner had actual proof of the allegations going beyond mere unsupported assertions." *Prewitt v. United States,* 83 F.3d 812, 819 (7th Cir.1996) (quoting *Barry v. United States,* 528 F.2d 1094, 1101 (7th Cir.1976)). "Mere unsupported allegations cannot sustain a petitioner's request for a hearing." *Id.* (quoting *Aleman v. United States,* 878 F.2d 1009, 1012 (7th Cir.1989)). The Court's careful review of the submissions of both Jennings and the government, together with the complete lack of evidentiary support for Jennings's motion, leads the Court to conclude that an evidentiary hearing is not required in this case. Thus, the Court will resolve the motion without a hearing.

### DISCUSSION

### A. Legal Standard

■ The Court must grant a motion to vacate, set aside, or correct a federal prison sentence when "the sentence was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255. However, "[h]abeas corpus relief under 28 U.S.C. § 2255 is reserved for extraordinary situations." *Prewitt,* 83 F.3d at 816 (citing *Brecht v. Abrahamson,* 507 U.S. 619, 633–34, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993)). Relief under section 2255 is available only if an error is "jurisdictional, constitutional, or is a fundamental defect which inherently results in a complete miscarriage of justice." *Barnickel v. United States,* 113 F.3d 704, 705 (7th Cir.1997) (quoting *Oliver v. United States,* 961 F.2d 1339, 1341 (7th Cir.1992)). Motions under section 2255 are subject to various bars, including that of procedural

---

1. During the criminal proceeding, the government was represented by Assistant United States Attorney Suzanne Garrison.

default. A section 2255 motion is "neither a recapitulation of nor a substitute for a direct appeal." *McCleese v. United States*, 75 F.3d 1174, 1177 (7th Cir.1996). Thus, a section 2255 motion cannot raise: (1) issues that were raised on direct appeal, unless there is a showing of changed circumstances; (2) non-constitutional issues that could have been raised on direct appeal, but were not; and (3) constitutional issues that were not raised on direct appeal. *See Belford v. United States*, 975 F.2d 310, 313 (7th Cir.1992), *overruled on other grounds by Castellanos v. United States*, 26 F.3d 717 (7th Cir.1994). Importantly, a claim of ineffective assistance of trial counsel may properly be raised in a section 2255 motion regardless of whether the defendant raised the issue on direct appeal. *See Massaro v. United States*, 538 U.S. 500, 504, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003); *United States v. Schuh*, 289 F.3d 968, 976 (7th Cir.2001); *United States v. Hamzat*, 217 F.3d 494, 501 (7th Cir. 2000). In this instance, the grounds for Jennings's section 2255 motion, none of which were raised on direct appeal, are couched as claims of ineffective assistance of counsel to avoid procedural default.

To establish ineffective assistance of counsel, Jennings shoulders a heavy burden. She must "show that [her] counsel's performance was deficient, and that the deficiency prejudiced [her] defense." *Wiggins v. Smith*, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Id.* (quoting *Strickland*, 466 U.S. at 688, 104 S.Ct. 2052). When a court reviews an ineffective assistance of counsel claim, the court's review is "highly deferential" to the attorney, "with the underlying assumption that 'counsel's conduct falls within the wide range of reasonable pro-

fessional assistance.'" *United States v. Holman*, 314 F.3d 837, 840 (7th Cir.2002) (quoting *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052). Put another way, "[d]efense counsel is 'strongly presumed to have rendered adequate assistance and to have made significant decisions in the exercise of his or her reasonable professional judgment.'" *Cooper v. United States*, 378 F.3d 638, 641 (7th Cir.2004) (quoting *United States v. Traeger*, 289 F.3d 461, 470 (7th Cir.2002)). To succeed on her claim, Jennings must show "errors so serious that counsel was not functioning as 'counsel' guaranteed [to her] by the Sixth Amendment[.]" *Holman*, 314 F.3d at 839 (quoting *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052).

 In general, prejudice for purposes of a claim of ineffective assistance of counsel is established by showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Benefiel v. Davis*, 357 F.3d 655, 661 (7th Cir.2004) (quoting *Strickland*, 466 U.S. at 694, 104 S.Ct. 2052). In a case where a movant under 28 U.S.C. § 2255 pleaded guilty as a result of alleged ineffective assistance of counsel, to satisfy the second *Strickland* prong the movant must show that there is a reasonable probability that, but for counsel's deficient performance, the movant would not have entered a guilty plea and instead would have gone to trial. *See Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985); *Hays v. United States*, 397 F.3d 564, 568 (7th Cir.2005); *Bridgeman v. United States*, 229 F.3d 589, 592 (7th Cir. 2000). When analyzing counsel's performance at sentencing, prejudice exists when, but for counsel's action or inaction, the movant would have received a shorter sentence. *See Glover v. United States*, 531 U.S. 198, 202–04, 121 S.Ct. 696, 148

L.Ed.2d 604 (2001); *Strickland*, 466 U.S. at 689, 104 S.Ct. 2052. Moreover, a claim of ineffective assistance of counsel must be supported by objective evidence, not merely by a movant's own self-serving testimony. *See Cooper*, 378 F.3d at 641–42; *McCleese*, 75 F.3d at 1179; *Toro v. Fairman*, 940 F.2d 1065, 1068 (7th Cir.1991). With this standard in mind, the Court turns to consideration of Jennings's section 2255 motion.

## B. Jennings's Motion to Vacate, Set Aside, or Correct Sentence

### 1. Voluntariness of Jennings's Guilty Plea

 Jennings contends that her counsel was ineffective because he coerced her to plead guilty by telling her that, unless she did so, the government would file new charges against her and members of her family and would submit to the Court audiotape evidence of additional drug-trafficking activity by Jennings. Also, Jennings claims that her attorney promised her that she would receive a reduced sentence in exchange for her assistance in an investigation of misconduct by guards at the Tri County Detention Center in Ullin, Illinois, where Jennings was held during her pre-trial detention. For these reasons, Jennings contends that her guilty plea was not knowing and voluntary. The Court disagrees.

 Under Rule 11 of the Federal Rules of Criminal Procedure, a court must determine whether a defendant's plea is voluntary and intelligent by examining the plea in light of the totality of the circumstances. *See United States v. Cross*, 57 F.3d 588, 591 (7th Cir.1995). Under Rule 11, the court can take into account the defendant's level of intelligence, whether he or she is represented by counsel, the complexity of the charge, the defendant's own statements, and the evidence recited

by the government to which the defendant admits. *See United States v. Barragan-Rangel*, 198 F.Supp.2d 973, 976 (N.D.Ill. 2002) (citing *United States v. Musa*, 946 F.2d 1297, 1304 (7th Cir.1991)). "The only rational manner in which a judge may determine whether a plea is knowing and voluntarily made, is to observe the defendant's demeanor and responses to the court's questions and to rely on the defendant's sworn answers. The court can best expose 'the defendant's state of mind on the record through personal interrogation.'" *United States v. Ellison*, 835 F.2d 687, 693 (7th Cir.1987) (quoting *United States v. Fountain*, 777 F.2d 351, 356 (7th Cir.1985)). "The issue is ... whether the defendant has 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him.'" *Eddmonds v. Peters*, 93 F.3d 1307, 1314 (7th Cir.1996) (quoting *Dusky v. United States*, 362 U.S. 402, 402, 80 S.Ct. 788, 4 L.Ed.2d 824 (1960)).

In this case, the transcript of the hearing at which Jennings entered her guilty plea shows that, minutes before she gave the plea, the Court and counsel for the parties conducted in Jennings's presence a detailed discussion of how her sentence would be computed under the United States Sentencing Guidelines:

MR. DELANEY: Your Honor, again what I've told my client in the past with the government filing the enhancement would raise her offense level from a 34 to a 37. And since she is a career offender, Category VI, this would result in a sentencing range of 360 months to life. However, she is pleading guilty which would result in a reduction of three points which would bring her down to a 34. And a 34, Category VI,

would be 262 to 327 months. So that's what we have calculated.

MRS. GARRISON: I understand counsel then to agree with the penalties as set forth in the information as to sentencing, the statutory penalties up to 30.

MR. DELANEY: Of 360 to life.

MRS. GARRISON: Up to 30 years statutorily on Count I and up to life statutorily on Count II.

MR. DELANEY: As the potential maximums, that's correct, your Honor.

Transcript of Change of Plea Hearing ("Plea Transcript") at 6–7. Jennings stated under oath that she understand the foregoing discussion:

THE COURT: All right. Mrs. Jennings, you have sat here and listened to the discussions between your lawyer, the court, and the U.S. attorney. Did you hear all of those?

MRS. JENNINGS: Yes.

THE COURT: You understand what's going on?

MRS. JENNINGS: Yes.

*Id.* at 7.

At the plea hearing, Jennings stated under oath that her guilty plea was voluntary and not the product of coercion, and she acknowledged that she was entering her guilty plea without a plea agreement with the government and without any guarantees as to what her ultimate sentence might be:

THE COURT: Has anyone threatened or forced you to plead guilty?

MRS. JENNINGS: No, sir.

THE COURT: Now I understand that this is an open plea, there is no plea agreement; is that correct?

MR. DELANEY: That's correct, your Honor.

THE COURT: Is that your understanding?

MRS. JENNINGS: Yes.

THE COURT: All right. No plea agreement, an open plea. Now do you understand that if I let you plead guilty to these charges you will not have the right to withdraw your plea, you will be bound by it?

MRS. JENNINGS: Yes.

THE COURT: That's particularly true in the Seventh Circuit. In the circuit that you're in, our court of appeals has said that once you plead guilty, that's it. It is one time for all time. Do you understand that?

MRS. JENNINGS: Yes.

THE COURT: Okay. Has anyone promised you what your sentence will be?

MRS. JENNINGS: No, sir.

THE COURT: Have you discussed with your lawyer how the United States Sentencing Commission guidelines might apply to your case?

MRS. JENNINGS: Yes.

THE COURT: And do you understand that I will not be able to determine your guideline sentence until after a presentence report has been prepared by the probation office and you and the government have had a chance to review that report and challenge any of the facts set out in that report.

MRS. JENNINGS: Yes.

THE COURT: And even then, even then, after I determine what the proper guideline sentence is, I do have the authority in some instances to impose a sentence that is more or less severe than called for by the guidelines?

MRS. JENNINGS: Yes.

THE COURT: And because this is an open plea and there are no terms there both you and the government will have the right to appeal any sentence that I might impose. Do you understand that?

MRS. JENNINGS: Yes.

THE COURT: Not only you but the government too has the right to appeal.

MRS. JENNINGS: Yes.

Plea Transcript at 17–19.

 In light of Jennings's sworn statements at her plea hearing, it is impossible to give credence to her assertions that her plea was not made knowingly and voluntarily, with full understanding of the consequences. "Courts take the plea process seriously and hold defendants to their representations." *Hugi v. United States,* 164 F.3d 378, 381 (7th Cir.1999). Further, "[a] guilty plea is not a road-show tryout before the 'real' contest occurs in the § 2255 proceedings." *Id.* at 382. "[V]oluntary responses made by a defendant under oath before an examining judge [are] binding," *Ellison,* 835 F.2d at 693, and "[b]ecause of the great weight we place on these in-court statements, we credit them over [a criminal defendant's] later claims." *United States v. Martinez,* 169 F.3d 1049, 1054 (7th Cir.1999). *See also Schuh,* 289 F.3d at 975 (noting that "a careful plea colloquy under Rule 11 ensures that the guilty plea is knowing and voluntary"); *Bridgeman,* 229 F.3d at 592 (statements at a change of plea hearing are presumed to be truthful). In addition to Jennings's own sworn statements at her plea hearing, the government points out that the existence of the audio recordings which Jennings contends induced her guilty plea was not disclosed to her until some months after the plea was entered and, therefore, could not have had any effect on her decision to plead guilty. *See* Doc. 7 at 10. In light of the potential life sentence Jennings faced had she gone to trial, it surely was not objectively unreasonable for Jennings's attorney to encourage her to plead guilty.

Finally, the Court notes the total lack of evidentiary support furnished by Jennings for her allegations that her attorney represented to her that she would receive a sentence reduction in exchange for her cooperation in the investigation at the Tri County Detention Center. To prevail on her claim of ineffective assistance, Jennings must produce evidence both that a plea agreement existed and that she would have accepted the agreement. *See Paters v. United States,* 159 F.3d 1043, 1046, 1047 nn. 5–6 (7th Cir.1998) (citing *Toro,* 940 F.2d at 1068) (it is the burden of a movant under 28 U.S.C. § 2255 to show through "objective evidence" that a proposed plea agreement actually existed and that "there is a reasonable probability that [the movant] would have accepted the alleged proposed plea agreement," and objective evidence requires something more than the movant's self-serving testimony); *Key v. United States,* 806 F.2d 133, 139 (7th Cir. 1986) (allegations that counsel made promises to a defendant must be supported by allegations specifying the terms of the alleged promises, when, where, and by whom such promises were made, and the precise identity of any witnesses to such promises). As has been discussed, Jennings stated under oath that she had been offered nothing in return for her guilty plea and that she understood that she had no plea agreement with the government and that there were no guarantees regarding her final sentence. Likewise, the affidavit of Jennings's counsel establishes that no promise of a sentence reduction was made to Jennings in connection with her cooperation in the investigation at the Tri County Detention Center. *See* Doc. 7, Ex. 4 ¶ 8. Although there were plea discussions between Jennings and the government, these discussions failed through Jennings's unwillingness to cooperate:

THE COURT: ... Now, Mrs. Garrison, just so there is no mistake here—Mrs. Garrison. The problem in this case is that during the proffer this defendant

would not snitch on her family. Is that it, basically?

MRS. GARRISON: The defendant proffered and indicated that she had no knowledge of the drug trafficking activities of her family.

THE COURT: All right. Now, Mrs. Jennings, you understand that's the reason you're not getting a negotiated plea out of the government?

MRS. JENNINGS: Yes.

THE COURT: I just want you to understand what's going on here before you do the time. And you understand it?

MRS. JENNINGS: Yes, sir.

THE COURT: All right. Now this defendant is currently detained and is it the government's position she is not eligible for pretrial release?

MRS. GARRISON: That's correct, your Honor. If I might note for the record, too, there were additional topics beyond family relations she was not believed to be truthful on and I've had some additional conversation with Mr. Delaney about that and I believe it's been communicated.

THE COURT: Well, I just wanted her to understand. This is a person that's looking at a long and hard sentence and I want her to know why and let her know if there is anything that she can do to improve her situation. And she appears pretty intelligent to me and understands what's going on. Right?

MRS. JENNINGS: Yes, sir.

THE COURT: Okay. I mean, I've not known you very long. We've not met. But you don't look stupid to me. So you've made your decision; right?

MRS. JENNINGS: Yes, sir.

Plea Transcript at 21–23. The Court finds no merit in Jennings's claim of ineffective assistance of counsel.[2]

### 2. Failure to Investigate Evidence by Jennings's Counsel

Jennings contends also that her counsel was ineffective in that he failed to conduct a proper investigation of the evidence against her. Specifically, Jennings alleges that her counsel should have obtained transcriptions of audiotape and videotape evidence held by the government regarding the two crack-dealing incidents underlying her conviction and otherwise should have investigated the possibility of establishing an entrapment defense on his client's behalf. A movant under 28 U.S.C. § 2255 alleging ineffective assistance of counsel due to counsel's failure properly to investigate witnesses and

---

**2.** To the extent Jennings contends that her counsel was ineffective in failing to secure a plea agreement with the government, she is of course wrong. "[T]he successful negotiation of a plea agreement involves factors beyond the control of counsel, including the cooperation of his client ... as well as the cooperation of the prosecutor, who has no obligation to offer such an agreement." *United States v. Hall*, 212 F.3d 1016, 1022 (7th Cir.2000) (rejecting a claim of ineffective assistance of counsel based on defense counsel's failure to procure a plea agreement). "Prosecutors need not offer discounts and may withdraw their offers on whim. Defendants have no substantive right to bargain-basement sentences." *Id.* (quoting *United States v. Springs*, 988 F.2d 746, 749 (7th Cir.1993)). *Cf. United States v. Webb*, No. 96–1363, 1997 WL 417356, at *1 (10th Cir. July 25, 1997) ("[B]ecause negotiating such a plea would require the cooperation of both the government and district court—neither of which has any obligation in that regard—the ability to obtain a conditional plea agreement was beyond [the] attorney's control."). "[I]t is axiomatic that the government is not bound to discuss, much less enter into, a plea agreement because there are people who truly belong behind bars due to the serious harm they pose to society, especially those who choose to 'poison the community with the sale of illegal drugs.'" *Hall*, 212 F.3d at 1022 (quoting *United States v. O'Grady*, 812 F.2d 347, 355 (7th Cir.1987)).

evidence "has the burden of providing the court sufficiently precise information, that is, 'a comprehensive showing as to what the investigation would have produced.'" *Hardamon v. United States,* 319 F.3d 943, 951 (7th Cir.2003) (quoting *United States v. Gramley,* 915 F.2d 1128, 1133 (7th Cir. 1990)). *See also United States v. Hubbard,* 929 F.2d 307, 310–11 (7th Cir.1991) (a criminal defendant alleging ineffective assistance of counsel by reason of counsel's failure to investigate evidence must make a "comprehensive showing" as to what evidence such an investigation would have yielded). Jennings has made no such showing in this instance.

▮▮▮ In rare cases, an attorney's failure to investigate evidence or to call certain witnesses can constitute ineffective assistance of counsel. *See, e.g., Sullivan v. Fairman,* 819 F.2d 1382, 1388–93 (7th Cir. 1987) (holding that, where defense counsel was aware through police reports and discovery that there were five witnesses with no apparent reason to help the petitioner who made statements to police that were exculpatory or inconsistent with prosecution witness' statements, yet defense counsel's attempts to locate and interview them were perfunctory at best, counsel rendered ineffective assistance to the petitioner). However, defense counsel need not "track down every lead or ... personally investigate every evidentiary possibility before choosing a defense and developing it." *Id.* at 1392. Furthermore, acts or omissions of an attorney that may be classified as trial tactics cannot be considered by a court in evaluating an ineffective assistance of counsel claim. *See United States v. Williams,* 106 F.3d 1362, 1367 (7th Cir. 1997) (ruling that the *Strickland* test is "highly deferential" to counsel, "presuming reasonable judgment and declining to second guess strategic choices."); *Barnhill v. Flannigan,* 42 F.3d 1074, 1078 (7th Cir.

1994) ("Usually, counsel's decision not to call a witness is a tactical decision not subject to review."); *United States v. Limehouse,* 950 F.2d 501, 504 (7th Cir. 1991) ("Trial tactics are not subject to question by a reviewing court in deciding an ineffective assistance claim."); *Harris v. Reed,* 894 F.2d 871, 877 (7th Cir.1990) ("[T]his court is not free to question the objectively reasonable strategic decisions of counsel."); *United States v. McVicar,* 918 F.Supp. 1226, 1233–34 (N.D.Ill.1996) (ruling that trial strategy is not a viable subject for review by the court).

▮▮▮ "[W]hen an attorney in the course of a trial makes '[s]trategic choices ... after thorough investigation [they] are virtually unchallengeable.'" *United States v. Balzano,* 916 F.2d 1273, 1294 (7th Cir. 1990) (quoting *Sullivan,* 819 F.2d at 1391). This Court declines to "engage in second guessing, or 'Monday morning quarterbacking,' regarding counsel's strategic decisions" in his representation of Jennings. *Gray v. United States,* No. 03 C 2942, 2004 WL 2921858, at *5 (N.D.Ill.Dec.13, 2004) (refusing to grant a motion under 28 U.S.C. § 2255 on the grounds that the movant's counsel was ineffective by reason of failing to request a competency hearing). Jennings has not shown, and the Court does not believe, that Jennings's attorney was ineffective in failing to pursue an entrapment defense. At the time Jennings was indicted by the federal grand jury, she previously had been convicted twice in Illinois state court for selling crack, with one of the prior offenses having occurred while Jennings was on bond for the other offense; also, she was indicted for trading crack for designer clothing with a government informant on two occasions while she was still on probation and supervised release for the state offenses. *See United States v. Jones,* 950 F.2d 1309, 1314 (7th Cir.1991) (the elements of a valid

entrapment defense are government inducement of the crime and a lack of predisposition on the part of the defendant to engage in criminal conduct; factors relevant to the first element include the character or reputation of the defendant, whether the suggestion of criminal activity was originally made by the government, whether the defendant was engaged in criminal activity for a profit, whether the defendant evidenced a reluctance to commit the offense that was overcome by government persuasion, and the nature of the inducement or persuasion offered by the government). *See also United States v. Tufano*, No. 93 CR 623, 1994 WL 589624, at *1 (N.D.Ill. Oct.22, 1994) (quoting *United States v. Hollingsworth*, 27 F.3d 1196, 1200 (7th Cir.1994)) (explaining that "in passing on the question of predisposition, courts should ... consider generally whether the defendant was in position to commit the charged crime absent government involvement," and explaining that the test of predisposition is whether "[t]he defendant [is] so situated by reason of previous training or experience or occupation or acquaintances that it is likely that if the government had not induced him to commit the crime some criminal would have done so."). The record reflects that Jennings's counsel represented her ably, and Jennings's attorney doubtless served his client best by not wasting time in the pursuit of patently frivolous defenses. The Court finds that the performance of Jennings's counsel did not fall below an objective standard of reasonableness.

### 3. Failure to Object to Calculation of Criminal History

Jennings argues that she was improperly sentenced as a career offender because her two previous convictions for selling crack occurred when she was ages 18 and 19, respectively, and involved fairly small quantities of crack. This is essentially a challenge to the Court's application of the United States Sentencing Guidelines and as such should be deemed procedurally defaulted by reason of Jennings's failure to raise it on direct appeal. *See Barnickel*, 113 F.3d at 706; *Prewitt*, 83 F.3d at 816. Because it is framed as a claim of ineffective assistance of counsel, however, the Court will address this asserted basis for relief under 28 U.S.C. § 2255 on its merits. Were it the case that Jennings's counsel failed to challenge the propriety of sentencing Jennings as a career offender, the Court would deem this a reasonable strategic decision by counsel. It would have been appropriate for Jennings's attorney to pursue, as he did, a request for a downward departure based on Jennings's family ties and responsibilities, while foregoing a request for a downward departure on the basis of overrepresentation of Jennings's criminal history. As has been discussed, before being indicted on federal drug charges, Jennings had been convicted twice in state court for selling crack and in fact was still on probation and supervision for the state offenses when the federal indictment was handed down. As the Court observed at Jennings's sentencing hearing, "Now, Mrs. Jennings, she's got two convictions and yes it was for not a lot of crack cocaine but that's probably because she didn't have the opportunity to do a lot at that time. She was still relatively early in her career." Transcript of Sentencing Hearing ("Sentencing Transcript") at 15.

In view of the unlikelihood of securing a downward departure based on overrepresentation of Jennings's criminal history, it would have been reasonable for Jennings's counsel to forego a request for such a departure. *See Salcido–Cruz v. United States*, No. 02 C 8951, 2005 WL 1270047, at *5–7 (N.D.Ill. May 25, 2005) (counsel was not ineffective in failing to move for a

"safety valve" downward departure under section 5C1.2 of the United States Sentencing Guidelines where a movant under 28 U.S.C. § 2255 clearly was not eligible for such a departure, nor was counsel ineffective in failing to move for a downward departure on grounds he believed were not merited by law); *United States v. Vaiseta,* No. 01 C 7323, 2003 WL 22462554, at *1–2 (N.D.Ill. Oct. 30, 2003) (counsel was not ineffective in failing to request a downward departure on the grounds that a section 2255 movant was a deportable alien where, had counsel made such a motion, the court would have denied it); *Thompson v. United States,* No. 99 C 1778, 2000 WL 821711, at *3–5 (N.D.Ill. June 23, 2000) (holding that it was not ineffective assistance of counsel for a section 2255 movant's attorney to request a downward departure on the basis of acceptance of responsibility and the effects of child abuse, while foregoing requests for a downward departure on the basis of diminished capacity, aberrant behavior, and family circumstances that were unlikely to succeed). However, in this case the record discloses that Jennings's counsel did make a request for a downward departure based on overrepresentation of Jennings's criminal history, and that request was considered by the Court and, in the Court's discretion, denied:

> MR. DELANEY: Your honor, before I forget, one other thing, I'm sorry.
>
> THE COURT: Go right ahead.
>
> MR. DELANEY: The 1995 offense involved 1.5 grams of crack. The 1996 offense involved less than a gram of crack. And these new offenses involved incredibly small—not incredibly, relatively small amounts of crack. And because of her situation she had those two prior convictions, she's looking at this terribly extended amount of time for relatively small amounts of crack. And

> that was something else I thought that the court should take note of.
>
> THE COURT: Well, Mr. Delaney, that is a good argument and I do seriously consider it. Certainly thoughtful, reasonable people could conclude that the drug laws are in particular respects not fair. But, the laws are as written by our Congress, they're there and they're real. The motion for downward departure is denied.

Sentencing Transcript at 13–14. The Court concludes that Jennings has failed to show ineffective assistance of counsel.

### 4. Defectiveness of the Indictment

█ The final ground for relief asserted in Jennings's motion under 28 U.S.C. § 2255 is that her conviction was obtained pursuant to a defective indictment. The Court originally construed this as a challenge by Jennings to her sentence under *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), which held generally, of course, that acts that increase the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt. *See id.* at 489, 120 S.Ct. 2348. However, upon closer review of Jennings's section 2255 motion, the Court concludes that Jennings's argument is not in fact in the nature of a challenge to her sentence under *Apprendi.* Under 21 U.S.C. § 841(b)(1)(C), Jennings was eligible for a maximum sentence of thirty years on both counts of the indictment, and she was sentenced within the statutory maximum. *See United States v. Hernandez,* 330 F.3d 964, 980–81 (7th Cir.2003) ("[The defendant] had a prior felony drug conviction so the maximum sentence he could receive under § 841(b)(1)(C) was 30 years imprisonment. He received a sentence of only 20 years; therefore, there was no *Apprendi* violation."); *United States v. Duvall,* 272 F.3d 825, 830 (7th Cir.2001)

("Duvall's 30–year sentence does not exceed the maximum allowed under § 841(b)(1)(C) when there is a prior felony drug conviction, so there is no violation of *Apprendi*."). Jennings's challenge to the indictment in her case actually is that the government failed to prove by a preponderance of evidence that the substance she was convicted of distributing was crack cocaine, rather than a different form of cocaine base.[3]

■ Jennings's argument fails for several reasons. First, just as issues regarding a court's application of the United States Sentencing Guidelines are not cognizable on a motion under 28 U.S.C. § 2255, so too are challenges to the weight and sufficiency of evidence. *See Williams v. United States*, 365 F.2d 21, 22 (7th Cir.1966) (reliability of evidence must be raised on direct appeal and is not a proper issue for section 2255 review); *United States v. Edun*, 750 F.Supp. 337, 338 (N.D.Ill.1990) ("An attack on the sufficiency of the evidence is not cognizable under § 2255."). Second, Jennings, whose challenge to the weight and sufficiency of the evidence underlying her conviction is framed once again as a claim of ineffective assistance of counsel, can show neither cause nor prejudice under *Strickland* as a result of her counsel's alleged failure to challenge the government's evidence. Assuming for the sake of argument that the substance Jennings was convicted of distributing was not crack but a different form of cocaine base, the application of the Sentencing Guidelines would have been the same. The Sentencing Guidelines provide generally for a 100:1 ratio between the offense level applicable to crimes involving crack and crimes involving other forms of cocaine base. *See* U.S.S.G. § 2D1.1(c). In this case, Jennings's offense level for distribution of over 5 grams but less than 20 grams of crack was 26. *See id.* Her offense level was raised to 37 as a career offender subject to a statutory maximum penalty of thirty years' imprisonment. *See* U.S.S.G. § 4B1.1(b) & cmt. n. 2. The result would have been identical had Jennings been convicted of distributing not crack but a different form of cocaine base, because as a career offender she was eligible in either case for an offense level of 37 and a criminal history category of VI under the Sentencing Guidelines. *See id.*

■ Third and most importantly, there was ample evidence presented to the Court to establish that Jennings was distributing crack rather than another form of cocaine base. Most pertinent here are Jennings's sworn statements before the Court when she pleaded guilty:

THE COURT: Now you have talked to your lawyer about what you have been charged with but I'm nevertheless going to explain it to you. You have been charged in a two-count indictment with distribution of crack cocaine. In order to convict you of these offenses as to each count, the government must prove the following propositions beyond a reasonable doubt: First, you distributed a controlled substance; two, you did so knowingly or intentionally; and three, you knew the substance was a controlled substance. Okay.

MRS. JENNINGS: Yeah.

THE COURT: Now as to Count II of the complaint the government would be prepared—is that true, do you have a

---

**3.** The "defect" that Jennings alleges with respect to her indictment is that it charged her with distributing "divers quantities of a mixture and substance containing cocaine base, commonly known as 'crack cocaine[.]'" Doc. 3, Ex. C. Jennings appears to believe the language of the indictment is ambiguous as to whether the substance she was convicted of distributing was crack or another form of cocaine base.

specific amount to Count II, Mrs. Garrison?

MRS. GARRISON: It is not set forth specifically but the evidence would be, we would be prepared to prove it beyond a reasonable doubt, that it involved approximately 12.6 grams of crack.

THE COURT: All right. The government would be prepared to prove beyond a reasonable doubt that the offense involved approximately 12.6 grams of cocaine base in the form of crack cocaine. So do you understand exactly what it is the government would have to prove to prove you guilty beyond a reasonable doubt?

MRS. JENNINGS: Yes.

THE COURT: And do you also understand that the government says that it's prepared to prove that as to Count II the offense involved approximately 12.6 grams of cocaine base?

MRS. JENNINGS: Yes.

THE COURT: You understand?

MRS. JENNINGS: Yes.

Plea Transcript at 14–15. A few minutes later Jennings pleaded guilty to distributing crack cocaine:

THE COURT: Okay. Now, Mrs. Garrison, would you provide the court with a brief factual basis for this plea.

MRS. GARRISON: Yes, your Honor. The evidence would show that on February 19th of the year 2000 a confidential informant was working with the Alton Police Department and the Drug Enforcement Administration. That informant went to the defendant's residence in Alton with some designer clothing that the informant represented as basically being stolen clothing. At that time the defendant gave the informant approximately 1.3 grams of crack cocaine in trade for the stolen clothing. The same informant on February 24th of this year again met with the defendant. This time the informant was wearing a video camera. The informant gave the defendant some designer clothing. At that time the defendant gave the informant 12.6 grams of crack cocaine. The defendant knew and realized that at all times she was trafficking in cocaine base in the street form of crack cocaine and she engaged in these transactions knowingly.

THE COURT: All right. Mrs. Jennings, you have heard what the United States attorney has said. Is all of that true?

MRS. JENNINGS: Yes.

THE COURT: That being the case how do you plead to Count I and Count II of the indictment: Guilty or not guilty?

MRS. JENNINGS: Guilty.

*Id.* at 19–20.

As the United States Court of Appeals for the Seventh Circuit has noted, "we do not live in a world in which people use only the most specific term when speaking. A witness using the term 'drug' or 'dope' or 'cocaine' in addition to the term 'crack' does not mean that the substance about which she is speaking is not crack cocaine." *United States v. Earnest,* 185 F.3d 808, 812 (7th Cir.1999). The Court regards Jennings's own statements while entering her guilty plea, as well as her acceptance of the statements of others, including the government and the Court, at the plea hearing, as conclusive with respect to the issue of whether the substance Jennings was convicted of distributing was crack cocaine. *See United States v. Johnson,* 289 F.3d 1034, 1041 (7th Cir.2002) (a defendant's admissions in a plea agreement and his statements during several status hearings provided an "ample basis" for the district court to conclude that the defendant possessed crack cocaine); *United States v. Garrett,* 189 F.3d 610, 612 (7th

Cir.1999) (finding adequate evidence that the substance distributed by a defendant was crack cocaine where "the defendant ... referred to the substance as crack."); *United States v. Mattison,* 153 F.3d 406, 412 (7th Cir.1998) (statements in a presentence report were a sufficient basis to conclude that a defendant distributed crack cocaine); *United States v. Valenzuela,* 150 F.3d 664, 668 (7th Cir.1998) (a defendant's acceptance of statements made by others during his plea hearing that the defendant was dealing "crack" and the use of the term by the defendant's counsel during his sentencing hearing were sufficient evidence to conclude that the substance the defendant had distributed was crack cocaine). *Cf. United States v. Hargrove,* 32 Fed.Appx. 622, 626–27 (3d Cir.2002) ("[T]he record of the plea hearing clearly establishes that Hargrove entered a knowing and willing plea and that he knowingly trafficked in 'crack' cocaine on the three occasions charged in the indictment .... We note further that at no time during the plea colloquy did defendant or his counsel object to the terminology employed by the Government or the District Court."); *United States v. Stafford,* 258 F.3d 465, 471–72 (6th Cir.2001) (upholding a guilty plea after noting the consistent failure of the defendant or his counsel to raise objections during a plea colloquy and sentencing to the district court's characterization of the substance distributed by the defendant as crack). It is apparent from the record that Jennings has extensive experience with crack cocaine as both a seller and a user of the drug, and "those who smoke, buy, or sell this stuff are the real experts on what is crack." *United States v. Bradley,* 165 F.3d 594, 596 (7th Cir.1999). *See also United States v. Hardin,* 209 F.3d 652, 661 (7th Cir.2000) ("[T]he people who transport, cook, cut up, bag, and sell crack are the sort of people who tend to know what crack is."). The Court concludes that Jennings was properly convicted and sentenced for distributing crack cocaine, rather than a different form of cocaine base.

## C. Jennings's Reply in Support of Motion to Vacate, Set Aside, or Correct Sentence

 In Jennings's reply in support of her motion under 28 U.S.C. § 2255, she raises an additional challenge to her sentence, couched yet again as a claim of ineffective assistance of counsel, in which she relies upon *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), both of which held of course that, under a mandatory sentencing system, juries rather than courts must make determinations of sentencing factors. *See Booker,* 543 U.S. at 232–33, 125 S.Ct. 738; *Blakely,* 542 U.S. at 302–05, 124 S.Ct. 2531. As a general rule, arguments raised for the first time in a reply brief are waived. *See United States v. Carrasco,* No. 99 C 559, 1999 WL 286083, at *2 n. 2 (N.D.Ill. Apr.29, 1999); *Zambrana v. United States,* 790 F.Supp. 838, 843 (N.D.Ind.1992). Additionally, Jennings's argument has no merit. Both *Booker* and *Blakely* were decided long after Jennings's conviction. "A failure [by an attorney] to anticipate shifts in legal doctrine cannot be condemned as objectively deficient." *Knox v. United States,* 400 F.3d 519, 522–23 (7th Cir.2005) (citing *United States v. Smith,* 241 F.3d 546, 548 (7th Cir.2001)). *See also Fuller v. United States,* 398 F.3d 644, 650 n. 4 (7th Cir.2005) (failure to anticipate *Blakely* and *Booker* was not ineffective assistance of counsel). In any event, Jennings cannot demonstrate prejudice for purposes of the *Strickland* test because the Seventh Circuit Court of Appeals has held that neither *Booker* nor *Blakely* apply retroactively on collateral

review. *See McReynolds v. United States,* 397 F.3d 479, 480–81 (7th Cir.2005); *United States v. Ford,* 383 F.3d 567, 568 (7th Cir.2004); *Simpson v. United States,* 376 F.3d 679, 681–82 (7th Cir.2004). The Court rejects the additional ground for relief under section 2255 asserted by Jennings in her reply brief.

CONCLUSION

Jennings's motion for relief pursuant to 28 U.S.C. § 2255 (Doc. 1) is **DENIED,** and this action is **DISMISSED** with prejudice. The Clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**